[No. 38017-6-I. Division One. April 28, 1997.]

KATHLEEN M. GREEN, ET AL., *Appellants*, v. AMERICAN PHARMACEUTICAL COMPANY, ET AL., *Defendants*, KIRKMAN LABORATORIES, ET AL., *Respondents*.

*Stephen L. Bulzomi, John L. Messina,* and *Messina Law Firm*; and *Virginia L. De Costa,* for appellants.

*Nancy T. McKinley* and *Fallon & McKinley,* for respondent Kirkman Laboratories.

*Karen J. Vanderlaan* and *Helsell, Fetterman, L.L.P.,* for respondent Eli Lilly & Co.

*Jan C. Kirkwood* and *Williams, Kastner & Gibbs, L.L.P.,* for respondent E.R. Squibb & Sons.

AGID, J. — The trial court dismissed the Greens' claims against diethylstilbestrol (DES) manufacturers, Eli Lilly & Company, E.R. Squibb & Sons and Kirkman Laboratories, on summary judgment. It ruled that the statute of limitations had expired three years after Ms. Green discovered that she had a cervical abnormality caused by DES. The only medical testimony presented on summary judgment was that her earlier injury was "separate and distinct" from the one on which this suit is based. We hold that for separate and distinct injuries, as distinguished from progressive diseases or injuries, the discovery rule applies separately to each injury. On the record before us, there is no evidence disputing the medical testimony that Ms. Green suffered separate and distinct injuries and no basis on which to conclude that she discovered or should have discovered her second injury earlier than she did.

We therefore reverse and remand to the trial court for further proceedings.

## FACTS

Between the 1940s and the early 1970s, doctors prescribed DES to pregnant women to prevent problems such as miscarriages and spontaneous abortions. In 1966, when Joanne McCutchen was pregnant with Kathleen Green, her obstetrician, Dr. Walter Keifer, prescribed DES because Ms. McCutchen had a history of miscarriages.

In 1971, the medical community began studying the effects of DES on newborns, and several medical journals published articles reporting that DES causes cancer cells to develop in the vagina. In that same year, the FDA required DES manufacturers to warn pregnant women about the drug's harmful effects. Over the years, Washington "DES daughters" injured by the drug have filed numerous lawsuits against its manufacturers.

In 1980, Dr. Keifer examined Ms. Green for DES exposure. A year later, he diagnosed her as having a "hooded cervix," an abnormality caused by DES in which the cervix has a hump in the middle. Ms. Green first received treatment in 1986 for possible cancer cells when a PAP smear revealed that she had abnormal cells in her cervix.

Ms. Green was married in 1988 and, a year later Dr. Hisham Tamimi, a DES specialist, began examining her on a regular basis. In 1991, the Greens contacted an attorney who specialized in DES cases. On his advice, Ms. Green had a hysterosalpingogram (HSG) to check the size and shape of her uterus. In January 1992, the HSG revealed that she had a T-shaped uterus, a malformation associated with DES exposure. According to Ms. Green, this was when she first discovered that her DES exposure had also caused this condition. In the summer of 1994, Ms. Green became pregnant and gave birth to a premature baby. In 1995, after the Greens filed this lawsuit, Dr. Tamimi filed a declaration stating the following:

The cockscomb [hooded] cervix and uterine malformation [T-shaped uterus] both represent the changes caused by DES exposure. Some exposed women exhibit both these changes, others do not. Cervical and uterine changes are two separate and distinct changes from exposure to DES. They do not always occur together.

The Greens filed a lawsuit against the DES manufacturers in September 1994, alleging that they were both strictly liable and negligent for manufacturing DES and failing to warn that Ms. Green's mother's exposure to the drug could cause the uterine malformation.[1] Mr. Green also alleged loss of consortium. Lilly filed a summary judgment motion, arguing that the Greens' claims were time-barred and that Mr. Green's claim should be dismissed because the couple was not married at the time of the alleged tortious conduct. Squibb and Kirkman joined in the motion. The trial court granted the motion, ruling that all the claims were time-barred.

## DISCUSSION

We apply the usual standard of review to a trial court's summary judgment order.[2] The trial court relied on *Steele v. Organon, Inc.*, 43 Wn. App. 230, 716 P.2d 920, *review denied*, 106 Wn.2d 1008 (1986), and *Allen v. State*, 118 Wn.2d 753, 826 P.2d 200 (1992), to rule that the three-year statute of limitations had expired under the traditional discovery rule. RCW 4.16.080; RCW 7.72.060(3). Under this rule, a cause of action accrues when the plaintiff, through the exercise of due diligence, knew or should have known the basis for the cause of action. *Allen*, 118 Wn.2d at 757-58. The rule applies even when the plaintiff does not know the full extent of the injuries. *Steele*, 43 Wn.

---

[1]Ms. Green did not claim damages for her hooded cervix because it was barred by the statute of limitations.

[2]*Tanner Elec. Coop. v. Puget Sound Power & Light Co.*, 128 Wn.2d 656, 668, 911 P.2d 1301 (1996); *Higgins v. Stafford*, 123 Wn.2d 160, 168-69, 866 P.2d 31 (1994).

App. at 234. The trial court granted summary judgment because it found Ms. Green knew of the cervical abnormalities associated with DES before September 1991.

 Ms. Green argues that the discovery rule should apply separately to each injury because they are separate and distinct, rather than progressive. We agree. Under this rule, the statute of limitations does not begin to run until the plaintiff knew or should have known she had an injury she could not have discovered earlier. Other jurisdictions have adopted this approach, recognizing that it would be inequitable to apply the traditional rule in certain limited circumstances. *See, e.g., Martinez-Ferrer v. Richardson-Merrell, Inc.*, 105 Cal. App. 3d 316, 164 Cal. Rptr. 591, 592 (1980) (holding that a plaintiff who took an anti-cholesterol drug and experienced retinal swelling and dermatitis in 1960 could sue for a cataract condition which she developed from the same drug in 1976).

Here, Dr. Tamimi testified that the hooded cervix and the T-shaped uterus were separate and distinct injuries, and the defendants did not produce any contrary evidence. On this record, Ms. Green's injuries are separate and distinct, and the discovery rule applies separately to the later-discovered uterine condition. Applying this rule, the statute of limitations began to run in January 1992 when Ms. Green discovered that she had another injury caused by DES. Before she contacted her attorney in 1991, Ms. Green testified that no one told her that DES exposure could cause a T-shaped uterus. The defendants did not introduce any evidence that Ms. Green should have discovered that condition earlier. They argue that, had Ms. Green used due diligence, she should have discovered the second injury in 1981 because a vast amount of DES information was available throughout the 1980s. We are unaware of any case charging a plaintiff with knowledge of medical injuries simply because there exists literature on the subject. This is especially true of Ms. Green who was 14 years old in 1981, the time at which defendants argue she should have known that DES causes other injuries.

▮ Mr. Green contends that the statute of limitations for his loss of consortium claim accrued in January 1992 when his wife discovered she had a T-shaped uterus. The defendants argue that Mr. Green's claim is barred because he was not married to Ms. Green at the time of the tortious conduct. Courts in this country have unanimously held that a spouse can bring a loss of consortium action only when a marriage exists at the time of the tortious conduct and the resultant injury. *Christie v. Maxwell*, 40 Wn. App. 40, 47-48, 696 P.2d 1256, *review denied*, 104 Wn.2d 1002 (1985); *Stager v. Schneider*, 494 A.2d 1307, 1315 (D.C. App. 1985); *see Sawyer v. Bailey*, 413 A.2d 165, 5 A.L.R.4th 292 (Me. 1980); *Tremblay v. Carter*, 390 So. 2d 816 (Fla. Dist. Ct. App. 1980). There are two policy reasons for this rule: (1) "a person should not be permitted to marry a cause of action" and (2) "one takes a spouse in the then existing state of health and thus assumes the risk of any deprivation resulting from prior disability." *Stager*, 494 A.2d at 1315.

While this rule may apply when the tortious conduct and the injury were both discovered or could have been discovered before marriage, it does not bar Mr. Green's claim under the facts of this case. This is because a spouse's loss of consortium claim cannot accrue until the other spouse's claim, on which the loss of consortium depends, has also accrued. *See Conradt v. Four Star Promotions, Inc.*, 45 Wn. App. 847, 853, 728 P.2d 617 (1986); *Olsen v. Bell Tel. Lab., Inc.*, 388 Mass. 171, 445 N.E.2d 609, 613 (1983). The statute of limitations for Mr. Green's loss of consortium claim did not begin to run until he experienced his injury because it is separate and independent from his wife's claim. *See Reichelt v. Johns-Manville Corp.*, 107 Wn.2d 761, 776, 733 P.2d 530 (1987). Under these facts, Mr. Green could not have experienced an injury until Ms. Green discovered hers, and the defendants did not introduce any evidence to the contrary. We therefore also reverse the summary judgment order dismissing his claim.

Reversed and remanded.

WEBSTER and Cox, JJ., concur.

Review granted at 133 Wn.2d 1016 (1997).