[No. 65641-0. En Banc.]
Argued May 20, 1998. Decided August 20, 1998.
KATHLEEN M. GREEN, ET AL., *Respondents*, v. A.P.C., ET AL., *Petitioners*.

*Helsell, Fetterman, L.L.P.*, by *Karen J. Vanderlaan*; *Fallon & McKinley*, by *Nancy T. McKinley*; and *Williams, Kastner & Gibbs, L.L.P.*, by *Douglas A. Hofmann* and *Jan C. Kirkwood* (*Shook, Hardy & Bacon*, by *David W. Brooks*, of counsel), for petitioners.

*Messina Law Firm*, by *Stephen L. Bulzomi* and *John L. Messina*; and *De Costa Law Firm*, by *Virginia L. De Costa*, for respondents.

*Michael B. King* and *Linda B. Clapham*, on behalf of Washington Defense Trial Lawyers, amicus curiae.

*Gary N. Bloom, Bryan P. Harnetiaux*, and *Debra L. Stephens*, on behalf of Washington State Trial Lawyers Association, amicus curiae.

*Janet L. Rice, William J. Rutzick, Mark Leemon, Kristin M. Houser, and Sandra E. Widlan,* on behalf of Schroeter, Goldmark & Bender, amicus curiae.

TALMADGE, J. — ■ We are asked in this case to decide if distinct statutory limitations periods apply to putatively separate and distinct injuries arising from exposure to toxic products. We reaffirm the basic rule that for purposes of the statute of limitations a cause of action claiming harm from exposure to a toxic product accrues when the plaintiff knew or should have known the essential elements of the claim. As to the harm element of a claim, the plaintiff's action accrues ordinarily upon awareness of some appreciable injury caused by the exposure to the defendant's toxic product even if the full extent of the harm is unknown. The plaintiff is also charged with exercising due diligence to learn of the claim; if the plaintiff fails to exercise due diligence, he or she is charged with the knowledge due diligence would have revealed.

In this case, we affirm the Court of Appeals, which reversed the trial court's order on summary judgment because of the lack of any evidence in the record regarding what Kathleen Green discovered, or could have discovered, prior to 1992 regarding a possible diagnosis of a T-shaped uterus arising out of her mother's ingestion of DES (diethylstilbestrol). We also affirm the Court of Appeals' reversal of the trial court's summary dismissal of Joshua Green's loss of consortium claim. We remand the case to the trial court for further proceedings consistent with this opinion.

## ISSUES

1. Does the statute of limitations bar the Greens' claim because Kathleen knew or should have known, more than three years before she filed the present action, of her T-shaped uterus?

2. Has Mr. Green stated a claim for loss of consortium?

## FACTS

DES was prescribed between 1947 and 1971 to prevent miscarriages and other types of prenatal accidents.[1] As of 1966, Kathleen Green's mother, Joanne McCutchen, a nurse, had a 10-year history of pregnancy loss due to such prenatal accidents. When she became pregnant with Kathleen, her obstetrician prescribed DES. Kathleen was born on April 28, 1967. Kathleen concedes she understood by age 14 she was "a DES daughter."

In 1981, a doctor diagnosed Kathleen with having what he called a cockscomb or hooded cervix. A cockscomb cervix is a change caused by DES exposure. Kathleen says she had no idea at the time what that meant, but knew that because she was a DES daughter she needed careful monitoring of her condition by frequent pap smears.

In 1986, when she was 19, Kathleen had an abnormal pap smear, revealing a cervical problem. Her doctor performed a colposcopy and biopsies. She subsequently underwent cryosurgery for a precancerous condition and had acid treatments to prevent spreading of the precancerous cells. The treatment was successful. Kathleen understood then that her condition was due to DES exposure. She asserts, however, she "had no idea that DES would impact my reproductive capabilities." Clerk's Papers at 228. Kathleen married Joshua Green IV in June 1988.

---

[1]The history of DES and its toxic effect on the children of the women who ingested it are described in *Martin v. Abbott Lab.*, 102 Wn.2d 581, 689 P.2d 368 (1984), and *George v. Parke-Davis*, 107 Wn.2d 584, 733 P.2d 507 (1987).

Ms. Green claims she first learned of the potential for DES-caused reproductive problems after she visited her current counsel, John Messina, in the fall of 1991. Messina informed her she may have other damage due to DES. Evidently in response to Messina's information about the possibility of other DES consequences, she underwent a hysterosalpingogram (HSG), an X-ray procedure, in January 1992, which revealed her T-shaped uterus.[2]

Ms. Green became pregnant in the summer of 1994. In November 1994, she went into premature labor and was confined to her bed with medication and home uterine contraction monitoring. She was hospitalized several times during her pregnancy, but delivered a normal 7 lb., 6 oz. boy, Joshua Green V, by cesarean section on March 27, 1995. Ms. Green's postoperative course was normal, and she was discharged from the hospital three days later. As the baby's due date was April 15, 1995, he was 19 days premature.

The Greens filed the present lawsuit on September 27, 1994, after Ms. Green had been pregnant for approximately three months. They named five defendants, all pharmaceutical companies: American Pharmaceutical Company, Kirkman Laboratories, Eli Lilly & Company, E.R. Squibb & Sons, and Stanlabs (collectively, Eli Lilly). The Greens alleged strict liability, negligence, and failure to warn, and sought damages for the cockscomb cervix, the constant monitoring of her condition by pap smears, the colposcopy and biopsies, the cryosurgery and acid treatments, and problems with the birth of their child. Mr. Green alleged loss of consortium.

After conducting discovery, Eli Lilly, joined by the other defendants, moved for summary judgment in November 1995. Eli Lilly based its motion for dismissal on the statute of limitations, arguing the Greens knew or should have

---

[2]The parties have not provided specific medical expert testimony discussing the medical consequences of this condition.

known of the injuries they complained of more than three years prior to the time the Greens filed suit. Eli Lilly also argued Mr. Green's loss of consortium claim failed because no loss of consortium claim exists for premarital torts. In the course of resisting the defendants' motion, the Greens conceded that all of Ms. Green's claims except those pertaining to her T-shaped uterus were time barred. The trial court granted the motions for summary judgment dismissing the Greens' action against the defendants. The trial court also dismissed Mr. Green's loss of consortium claim.

On appeal, Division One of the Court of Appeals reversed in a published opinion, finding that separate statutory limitations periods were applicable for the "separate and distinct" injuries to Kathleen Green from her mother's DES ingestion. The court found questions of fact present as to when the statute of limitations accrued for each of the distinct injuries to Ms. Green and Mr. Green's loss of consortium claim. *Green v. A.P.C.*, 86 Wn. App. 63, 935 P.2d 652 (1997). We granted review.

## ANALYSIS

### A. Standard of Review for Summary Judgment

 On appeal from summary judgment, we engage in the same inquiry as the trial court. *Tanner Elec. Coop. v. Puget Sound Power & Light Co.*, 128 Wn.2d 656, 668, 911 P.2d 1301 (1996). We review the motion for summary judgment de novo, and treat all facts and inferences therefrom in a light most favorable to the nonmoving party. *Fell v. Spokane Transit Auth.*, 128 Wn.2d 618, 625, 911 P.2d 1319 (1996). If there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, we uphold summary judgment. CR 56(c).

### B. Statute of Limitations and the Discovery Rule

The parties here ask us to apply "the statute of limitations" to the Greens' claims, and, yet, they do not tell us if the applicable statute is RCW 4.16.080(2), the general stat-

ute for negligence claims, or RCW 7.72.060(3), the statute for claims under Washington's product liability and tort reform act of 1981. The statutes employ different language regarding the accrual of claims, but the parties apparently agree there is no difference in the outcome of this case whichever statute applies.

■ RCW 4.16.080(2) limits to three years a person's ability to file a claim for injuries. However, under Washington's discovery rule, a cause of action does not accrue until a party knew or should have known the essential elements of the cause of action—duty, breach, causation, and damages. *Ohler v. Tacoma Gen. Hosp.*, 92 Wn.2d 507, 598 P.2d 1358 (1979), *superseded by statute as stated in Wood v. Gibbons*, 38 Wn. App. 343, 684 P.2d 619 (1984); *Sahlie v. Johns-Manville Sales Corp.*, 99 Wn.2d 550, 663 P.2d 473 (1983); *In re Estate of Hibbard*, 118 Wn.2d 737, 826 P.2d 690 (1990); *Allen v. State*, 118 Wn.2d 753, 758, 826 P.2d 200 (1992). The discovery rule does not require a plaintiff to understand all the legal consequences of the claim. As we said in *Reichelt v. Johns-Manville Corp.*, 107 Wn.2d 761, 772, 733 P.2d 530 (1987):

> Mr. Reichelt would have us adopt a rule that would in effect toll the statute of limitations until a party walks into a lawyer's office and is specifically advised that he or she has a legal cause of action; that is not the law.

■ In enacting RCW 7.72.060(3), the Legislature provided that a cause of action under RCW 7.72 accrued when the injured party "discovered or in the exercise of due diligence should have discovered the harm and its cause." *See North Coast Air Servs., Ltd. v. Grumman Corp.*, 111 Wn.2d 315, 759 P.2d 405 (1988).

■ Regardless of whether RCW 4.16.080(2) or RCW 7.72.060(3) is applied here,[3] a cause of action may accrue for purposes of the statute of limitations if a party *should have* discovered salient facts regarding a claim. *See, e.g.,*

---

[3]We do not decide which statute is applicable to Kathleen Green's case.

*Gevaart v. Metro Constr., Inc.*, 111 Wn.2d 499, 502, 760 P.2d 348 (1988); *Hibbard*, 118 Wn.2d at 752. This is true in the toxic tort setting specifically. *Sahlie*, 99 Wn.2d at 554 (asbestos exposure); *White v. Johns-Manville Corp.*, 103 Wn.2d 344, 348, 693 P.2d 687, 49 A.L.R.4TH 955 (1985); *Reichelt*, 107 Wn.2d at 772 ("A party must exercise reasonable diligence in pursuing a legal claim. If such diligence is not exercised in a timely manner, the cause of action will be barred by the statute of limitations.").

The general rule in Washington is that when a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the actual harm. The plaintiff is charged with what a reasonable inquiry would have discovered. "[O]ne who has notice of facts sufficient to put him upon inquiry is deemed to have notice of all acts which reasonable inquiry would disclose." *Hawkes v. Hoffman*, 56 Wash. 120, 126, 105 P. 156 (1909). *Accord Enterprise Timber, Inc. v. Washington Title Ins. Co.*, 76 Wn.2d 479, 482, 457 P.2d 600 (1969); *American Sur. Co. v. Sundberg*, 58 Wn.2d 337, 344, 363 P.2d 99 (1961) ("notice sufficient to excite attention and put a person on guard, or to call for an inquiry is notice of everything to which such inquiry might lead."), *cert. denied*, 368 U.S. 989, 82 S. Ct. 598, 7 L. Ed. 2d 526 (1962).

The statute of limitations is not postponed by the fact that further, more serious harm may flow from the wrongful conduct. We said in *Lindquist v. Mullen*, 45 Wn.2d 675, 677, 277 P.2d 724 (1954) (quoting 34 AM. JUR. *Limitation of Actions* § 160), *overruled in part by Ruth v. Dight*, 75 Wn.2d 660, 453 P.2d 631 (1969) (establishing discovery rule):

> Where an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once. It is not material that all the damages resulting from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date.

The adoption of the discovery rule in *Ruth* modified this statement by declaring the statute of limitations does not attach at once, but only upon discovery of the harm. Nevertheless, the essence of the statement remains the same: the running of the statute is not postponed until the specific damages for which the plaintiff seeks recovery actually occur. *Reichelt*, 107 Wn.2d at 733. *See also Steele v. Organon, Inc.*, 43 Wn. App. 230, 716 P.2d 920 (1986); *Raymond v. Ingram*, 47 Wn. App. 781, 737 P.2d 314, *review denied*, 108 Wn.2d 1031 (1987); *Zaleck v. Everett Clinic*, 60 Wn. App. 107, 802 P.2d 826 (1991). *Cf. First Md. Leasecorp v. Rothstein*, 72 Wn. App. 278, 864 P.2d 17 (1993).

To hold otherwise would run contrary to important policy considerations such as Washington's strong preference for avoiding the splitting of causes of action. *State v. Superior Court*, 145 Wash. 576, 579, 261 P. 110 (1927). In effect, a plaintiff would have a new action for damages for each new condition that became manifest. This could also lead to the highly impractical consequence of multiple statutes of limitations applying to the same allegedly wrongful conduct. We reject an approach leading to such a result.

The Greens and amicus Washington State Trial Lawyers Association (WSTLA) urge us to adopt what they call the "two-injury" rule[4] with respect to the discovery of harm. They argue the statute of limitations does not begin to run until a plaintiff discovers each "separate and distinct injury" flowing from the defendant's wrongful conduct. They argue Kathleen's T-shaped uterus was a separate and distinct injury caused by DES, and that she did not know about it until January 1992, when she heard the results of her HSG examination. While analogizing their situation to other latent injury cases like those arising from asbestos exposure, the Greens argue that because the T-shaped uterus is a separate and distinct injury, the statute of limi-

---

[4]The "two-injury" rule is something of a misnomer. Under the theory advanced by the Greens and WSTLA, a separate statutory period applies to each separate and distinct injury regardless of the number.

tations did not begin to run until Kathleen discovered it. The record does not contradict her assertion she did not know about it until 1992, but begs the question of when, with the required exercise of "reasonable diligence," she *should* have known about it.

Washington has not yet applied the "separate and distinct injuries" exception to the traditional rule regarding the harm element of the accrual of a cause of action. We decline to do so here in the absence of appropriate testimony that a T-shaped uterus and a cockscomb cervix are truly separate and distinct consequences of DES exposure.[5]

## C. Summary Judgment in the Trial Court

Turning to the specific facts in this case, because Eli Lilly does not claim Kathleen *actually* knew of her T-shaped uterus more than three years before she filed suit, the only question in this case is whether she *should* have known of its presence more than three years before

---

[5]The Greens submitted only one medical declaration, that of Dr. Hisham R. Tamimi, in support of their position in this case. While Dr. Tamimi is certainly a qualified expert, his declaration is entirely cursory on the key issue in this case. Dr. Tamimi testified:

The cockscomb cervix and uterine malformation both represent the changes caused by DES exposure. Some exposed women exhibit both of these changes, others do not. Cervical and uterine changes are separate and distinct changes from exposure to DES. They do not always occur together.

Clerk's Papers at 232. Dr. Tamimi's declaration gives us little help in deciding generally if the conditions associated with DES exposure are truly "separate and distinct" insofar as his declaration fails to point us toward epidemiological or clinical data on the relationship between DES exposure and associated consequences such as cancer, a T-shaped uterus, or a cockscomb cervix. Most pointedly, in Kathleen Green's case, we do not know if in 1986, when she was diagnosed with a cockscomb cervix due to DES exposure, whether a T-shaped uterus, to a reasonable medical probability, would have been revealed by an HSG, or even if such a procedure was routinely employed in 1986. *See Guile v. Ballard Community Hosp.*, 70 Wn. App. 18, 851 P.2d 689 (expert affidavit which merely summarized plaintiff's postsurgical complications and concluded, without support, that defendant's "faulty technique" caused such complications did not defeat summary judgment motion), *review denied*, 122 Wn.2d 1010, 863 P.2d 72 (1993).

the time she filed suit.[6] In order to sustain its burden as the moving party in the motion for summary judgment, Eli Lilly had to show there is no issue of material fact with regard to what Kathleen should have known. *Hash v. Children's Orthopedic Hosp. & Med. Ctr.*, 110 Wn.2d 912, 915, 757 P.2d 507 (1988). Eli Lilly failed to carry its burden.

Eli Lilly claims Ms. Green *could* have found out about her T-shaped uterus, and therefore *should* have found out about it, no later than 1986 (eight years before she initiated this action), when she had the abnormal pap smear and underwent the cryosurgery. Eli Lilly argues a "reasonable investigation would have revealed no later than 1986 . . . all elements of a DES plaintiff's claim." Br. of Resp'ts at 20 (listing numerous publications on DES).[7]

In moving for summary judgment, Eli Lilly submitted no affidavits, declarations, or competent evidence of any kind to the trial court on the relationship of DES to T-shaped uterine problems or cervical malformations in DES daugh-

---

[6]The harm Kathleen Green sustained was the T-shaped uterus. The damages resulting from the harm consisted of her subsequent difficult pregnancy. Ms. Green's cause of action accrued when she first knew or should have known of her harm—the T-shaped uterus—not when she suffered resulting damages from that malformation. The Greens have conceded as much:

> Only on January 2, 1992, after undergoing the HSG, did Kathleen first kn[o]w or should have known of any potential damage to her reproductive organs, specifically her uterus. It is from this date, January 2, 1992, that the Court should begin the statute of limitations to run on the Greens' claims for injuries to Kathleen's reproductive organs and capabilities.

Br. of Appellants at 20. This concession comports with the advice of their attorney, who declared: "I advised [the Greens] that date [the date of the HSG result] should be considered the date on which the statute of limitations began to run, even though there was not yet actual, provable reproductive disability." Clerk's Papers at 213. Thus, despite some inexact language suggesting the contrary, the Greens agree their cause of action arose no later than when she discovered her T-shaped uterus, not when Kathleen Green began having difficulties with her pregnancy.

[7]Eli Lilly also notes Green started law school in the summer of 1990, suggesting the knowledge he gained in his first year of law school about toxic torts may have animated the Greens to seek legal counsel, and gave him special knowledge regarding the discovery of claims.

ters. It relied solely on its opening and reply briefs.[8] Missing from the record is a declaration from a health professional stating a T-shaped uterus is a well-known birth defect in DES daughters, and that medical knowledge would have allowed Kathleen to discover it in 1986. Eli Lilly says: "[Kathleen Green's T-shaped uterus] was detectable at any time in her life by means of a simple x-ray test." Supplemental Br. of Pet'r at 4. If this is true, it would surely have been an easy matter for Eli Lilly to have submitted the declaration of a qualified health professional saying as much. Absent such a declaration, Eli Lilly left the trial court in an evidentiary void. *See generally Hash v. Children's Orthopedic Hosp. & Med. Ctr.* Eli Lilly offered only the argument of counsel. Argument of counsel does not constitute evidence. The Court of Appeals was correct in noting Eli Lilly "did not introduce any evidence that Ms. Green should have discovered that condition earlier." *Green,* 86 Wn. App. at 67.

The question of when a plaintiff should have discovered the elements of a cause of action so as to begin the running of the statute of limitation is ordinarily a question of fact. *Adcox v. Children's Orthopedic Hosp. & Med. Ctr.,* 123 Wn.2d 15, 34-35, 864 P.2d 921 (1993); *Honcoop v. State,* 111 Wn.2d 182, 194, 759 P.2d 1188 (1988); *Ohler,* 92 Wn.2d at 510. The defendants here bore the initial burden of showing the absence of an issue of material fact. *Young v. Key Pharms., Inc.,* 112 Wn.2d 216, 225, 770 P.2d 182 (1989). They did not carry their burden when they failed to produce evidence upon which the trial court could have properly relied in concluding Kathleen should have known about her T-shaped uterus more than three years before

[8]Eli Lilly belatedly contends in its response to the amicus brief of Schroeter, Goldmark & Bender that Ms. Green's T-shaped uterus could have been discovered "at any time" by the HSG procedure, citing a Minnesota federal district court case. *Narum v. Eli Lilly & Co.,* 914 F. Supp. 317 (D. Minn. 1996). Even if correct, medical facts cited in a case report are not admissible evidence in a Washington court, nor is counsel competent to testify to medical facts or interpret the medical literature, to a reasonable medical probability, in Washington courts.

she filed suit. We therefore reverse the summary judgment, and remand the case for further proceedings.

D. Mr. Green's Loss of Consortium Claim

 Washington recognizes loss of consortium as a separate, not derivative, claim. *Reichelt*, 107 Wn.2d at 776. Mr. Green's cause of action for loss of consortium, as a separate and independent claim, accrued when he first experienced injury due to loss of consortium. *Id.*

Joshua Green claims loss of consortium damages stemming from Kathleen's difficult pregnancy. The Court of Appeals correctly pointed out the rule in most jurisdictions: a loss of consortium claim does not lie when the injury to the spouse that caused the loss of consortium occurred prior to the marriage. *Green*, 86 Wn. App. at 68. *See* Charles Plovanich, Annotation, *Recovery for Loss of Consortium for Injury Occurring Prior to Marriage*, 5 A.L.R.4TH 300 (1981 & Supp. 1997). Because Kathleen Green's injury resulted from her mother's ingestion of DES while Kathleen was in utero, the injury was prior to her marriage to Joshua. Thus, Joshua arguably "married into" the injury, and ought not have a cause of action for loss of consortium.

One court listed three rationales for this rule: (1) a person should not be permitted to marry a cause of action; (2) one assumes with a spouse the risk of deprivation of consortium arising from any prior injury; (3) as a matter of policy, tort liability should be limited. *Stager v. Schneider*, 494 A.2d 1307, 1315 (D.C. App. 1985). But the listed three rationales for the majority rule ignore the circumstance in which the injury to the affected spouse is latent and unknown. Joshua Green could not have married a lawsuit in 1988 if Kathleen herself did not know then she had a T-shaped uterus that would cause her to have difficult pregnancies. The "assumption of risk" rationale suffers from the same defect. One cannot assume a risk one does not and cannot know about. *Kirk v. Washington State Univ.*, 109 Wn.2d 448, 454-55, 746 P.2d 285 (1987). The third rationale is also weak; it is surely foreseeable that

a future spouse or close relative might suffer loss of consortium damages. The class of potential plaintiffs is therefore quite limited, confined to those who might some day be in consortium with an injured party. Thus, allowing such claims does not expose a tort-feasor to unbounded liability.

 The best argument for rejecting the majority rule, however, is its fundamental unfairness in the toxic exposure context: loss of consortium damages should be available for a premarital injury if the injured spouse either does not know or cannot know of the injury. Although still a distinct minority, several courts have recognized this principle in toxic torts cases. *Stager*, 494 A.2d 1307; *Kociemba v. G.D. Searle & Co.*, 683 F. Supp. 1577 (D. Minn. 1988); *Aldredge v. Whitney*, 591 So. 2d 1201 (La. Ct. App. 1991); *Furby v. Raymark Indus., Inc.*, 154 Mich. App. 339, 397 N.W.2d 303 (1986). We now join those courts and hold that Joshua Green's claim for loss of consortium accrued when he knew or should have known the essential elements of his claim.[9] Because we decline to apply an absolute bar to premarital injuries if the spouse seeking a loss of consortium claim could not know of the harm, we remand the case to the trial court where Mr. Green will have the burden of proving both when he first experienced the loss and what damages he suffered.

## CONCLUSION

As the moving party on summary judgment, Eli Lilly had the burden of showing there were no genuine issues of material fact necessitating a trial with respect to the time Kathleen Green should have known about her T-shaped uterus. Eli Lilly failed to carry its burden because it failed

---

[9]The Court of Appeals held "a spouse's loss of consortium claim cannot accrue until the other spouse's claim, on which the loss of consortium depends, has also accrued." *Green*, 86 Wn. App. at 68. This is incorrect. The spouse's loss of consortium claim accrues when the spouse first suffers injury from loss of consortium, regardless of when the other spouse's injury claim accrues. *Reichelt*, 107 Wn.2d at 776.

to produce competent evidence to show Kathleen Green should have known about her condition more than three years prior to the commencement of the current action.

With respect to Joshua Green's claim for loss of consortium, the rationale for the majority rule forbidding such claims for premarital injuries is fundamentally unfair in toxic exposure cases with latent injuries. We affirm the Court of Appeals, and remand the case to the trial court for further proceedings consistent with this opinion.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, and SANDERS, JJ., concur.

Reconsideration denied October 1, 1998.