IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MICHAEL J. YORK, | ) | No. 32363-3-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CSL PLASMA, INC., f/k/a ZLB | ) | |
| PLASMA, a foreign corporation, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, J. — The trial court dismissed Michael York's lawsuit on summary judgment on the basis that it was filed outside of the applicable three-year period of limitations. Mr. York appeals, arguing (1) the trial court erred in allowing the summary judgment argument to be heard without sufficient notice to him, (2) the medical malpractice statute applies because CSL Plasma is a health care provider, and (3) his lawsuit was timely under RCW 4.16.350 (applicable to health care professionals), or RCW 4.16.080(2) (applicable to negligence actions). We disagree and affirm.

FACTS

Around December 2008, Mr. York began donating blood plasma at a CSL Plasma collection facility located on Sprague Avenue in Spokane. The process of donating

plasma, or plasmapheresis, is a process whereby the cellular portion of the blood is separated from the liquid portion (the plasma). The cellular portion of the blood is returned to the donor and the plasma is retained by the plasmapheresis device. The blood plasma retained during plasmapheresis is used in the manufacture of high-grade pharmaceuticals. Plasmapheresis is highly regulated by the government, including under Title 21 of the Code of Federal Regulations. All plasmapheresis facilities must undergo periodic inspections by the Food and Drug Administration.

In April 2009, Mr. York volunteered to take part in a program called Immunizations with Immunogen Red Blood Cells (IRBC) as part of his blood plasma donation. Through the IRBC program, Mr. York agreed to be immunized with red blood cells that would stimulate his body to produce certain antibodies. The antibodies would then be collected in donated blood plasma.

On April 22, 2009, Mr. York signed an informed consent form regarding the IRBC program. The form explained the process of immunization with the IRBC and the potential hazards of receiving red blood cells. The form explained that even though the red cells CSL Plasma uses are tested and carefully selected for the specific antibody they are intended to produce, there is the chance that a donor may develop unexpected antibodies. CSL Plasma promised that as long as the donor is receiving red cell

2

immunizations, CSL Plasma would perform a screening test on the donor's blood once a year to determine the presence of unexpected antibodies. If the test showed unexpected antibodies, CSL Plasma said it would notify the donor promptly.

As for side effects from the program, the form stated,

> 6. Some local skin reactions and/or slight rise in body temperature may occur after you receive an immunization of red cells. Such reactions are usually mild and infrequent. If you experience a serious reaction, you will not be given any further red cell immunizations. Local reactions at the site of injection may include redness, induration, tenderness, pain, swelling, itching and nodule formation may occur.
> 7. Mild, generalized reaction which may include fever, malaise, fatigue, headache, nausea, vomiting, dizziness, myalgia, arthralgia and lymphadenopathy may occur.

Clerk's Papers (CP) at 21. The form also contained a donor statement of consent and understanding, stating the donor read the form, understood the information, and was voluntarily participating. Mr. York also signed a form titled "Disclosure of Origin of Immunizing Red Blood Cells." CP at 23. The form explained how the red blood cells are gathered, tested, and stored.

Mr. York received two inoculations, one on May 1, 2009, and the other on June 5, 2009. According to his complaint, the first inoculation caused a reaction. When Mr. York went in for the second inoculation, he told the doctor that he was developing a skin condition. Mr. York believed that lesions were forming around the veins directly below

3

the injection site. Mr. York was told not to be concerned and was given the second inoculation.

Mr. York contends that he became sick with increasing severity after these inoculations. Although Mr. York asserts in his unsworn pleadings that he has numerous medical records which document numerous diseases, the only medical record pertaining to his own diagnosis attached to his summary judgment response is a September 11, 2009 chart note from Dr. Chia Wang. Although the medical record shows it is comprised of four pages, Mr. York only attached the first page. We glean the following from this one page note: On September 3, 2009, Mr. York sought medical care from Dr. Chia Wang. His chief complaint was parasitosis.[1] Dr. Wang performed a battery of tests on Mr. York. Mr. York returned to Dr. Wang's office on September 11, 2009, during which time she prepared the chart note which contains the results of the earlier tests. According to the chart note, the tests results were normal, except for the presence of staphylococcus aureus.[2]

---

[1] "Parasitosis" is an infestation or disease caused by parasites. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1639 (1993).

[2] A bacterium commonly present on skin and mucous membranes, especially those of the nose and mouth. Symptoms commonly include boils, carbuncles, and internal abscesses. TABER'S CYCLOPEDIC MEDICAL DICTIONARY 1864 (17th ed. 1993).

Dr. Wang's chart note also discloses that she received a letter from CSL Plasma about Mr. York's involvement in the IRBC program. A medical doctor at CSL Plasma explained that on May 1, 2009, Mr. York was given Rh-positive red cells from a donor who was compatible with Mr. York's profile, and on June 5, he was given similar cells from a different donor. Mr. York was Rh-negative. The CSL Plasma doctor explained that Mr. York was tested for viruses and had a serum protein and electrophoresis checked, all which came back negative.

On September 12, 2013, Mr. York, acting pro se, served a notice and complaint for personal injuries on CSL Plasma. On October 15, 2013, Mr. York filed the summons and complaint with Spokane Superior Court. On December 9, CSL Plasma filed a motion for summary judgment, contending that Mr. York failed to bring suit within the three-year statute of limitations for a personal injury action. CSL Plasma maintained that Mr. York's action was time barred because he waited more than four years to bring his claim. The motion was sent to Mr. York on December 5 via Federal Express. The summary judgment motion hearing was initially set for January 10, 2014.

On January 2, 2014, Mr. York filed his response to CSL Plasma's summary judgment motion. In that response, he also requested a continuance. Mr. York contended that the statute of limitations had not expired because he did not discover CSL Plasma's

negligent acts until September 2013, when he found that a lawsuit was filed in federal court against CSL Plasma. *See Maddy v. CSL Plasma, Inc.*, 2012 WL 1931245 (E.D. Wash.) (court order). The lawsuit involved another donor who developed a bacterial infection after donating plasma around the same time and at the same location as Mr. York. He maintained that CSL Plasma intentionally concealed the bacteria contamination that was related to his illness. Mr. York requested more time for discovery. He did not explain what information he could obtain through discovery that would be useful for opposing CSL Plasma's motion for summary judgment.

CSL Plasma filed a reply in support of its summary judgment motion on January 6, 2014. CSL Plasma explained that it had not received a formal request for discovery from Mr. York, but had received a document entitled "Continuing Discovery" that was not filed with the court. The document requested records from CSL Plasma and refers to his 2009 participation in the program.

The summary judgment motion hearing did not occur on the scheduled date of January 10 or on the subsequently scheduled date of January 24. Mr. York showed up for these hearings but CSL Plasma did not.

On January 22, CSL Plasma completed a note for hearing for the continued summary judgment motion, scheduling February 7 as the hearing date. The note for

hearing was file stamped January 27. The record does not show proof of service upon

Mr. York, but Mr. York presumably received the notice on or before January 27 because

he opposed the new hearing date in a written objection which he filed on January 28.

At the beginning of the February 7, 2014 summary judgment hearing, Mr. York

requested that the trial court strike CSL Plasma's motion for summary judgment for not

being set in accordance with the time limits of CR 56. The court noted that Mr. York was

objecting that the hearing was not properly set, but disagreed. The court reasoned that

CSL Plasma originally filed its summary judgment motion on December 9, 2013, to be

heard on January 10, 2014, yet that hearing date was eventually continued to February 7,

2014. The court found that Mr. York had much more than 28-days' notice, as required by

CR 56.

The trial court heard argument on CSL Plasma's summary judgment hearing and

found that Mr. York's claims were time-barred. The court held that a three-year statute of

limitations applied regardless of whether Mr. York's claim was considered a personal

injury suit or a medical malpractice suit.

Mr. York appeals. He contends that the trial court erred in granting CSL Plasma's

motion for summary judgment. He maintains that the summary judgment motion was not

properly before the court in accordance with CR 56. He also contends that his

7

claim is governed under the statute for injuries resulting from health care providers, RCW 4.16.350, and that the eight-year statute of repose applies.

## ANALYSIS

1.    *Whether CSL Plasma complied with the time requirements of CR 56*

Mr. York contends that CSL Plasma's motion for summary judgment should have been dismissed because CSL Plasma failed to appear for multiple hearings in January 2014. Mr. York also contends that the motion was not timely filed.

Mr. York provides no authority for the proposition that CSL Plasma's nonappearance at unconfirmed summary judgment hearings prevents CSL Plasma from arguing its motion on a confirmed date. We find no authority for such a contention.

Moreover, CSL Plasma complied with the time requirements for CR 56. CR 56 requires a summary judgment motion to be set at least 28 calendar days after it is filed and served. CSL Plasma mailed its moving papers to Mr. York on December 5, 2013. Pursuant to CR 6(e), the effective service date upon Mr. York was three days later, or December 8, 2013. Because that day was a Sunday, CR 6(a) provides that the effective service date is the following Monday, December 9, 2013. This also is the date when CSL Plasma filed its moving papers. The December 9, 2013 filing and service date would allow the summary judgment hearing to be no sooner than 28-days thereafter, or January

6, 2014. The eventual February 7, 2014 hearing date therefore clearly complies with CR 56(a).

Mr. York does not argue that the trial court abused its discretion by refusing to continue the summary judgment hearing pursuant to his earlier written request. Even had he argued this on appeal, we would find no error, as Mr. York never described what facts his discovery request could disclose that would assist him in defending the summary judgment motion. *See* CR 56(f).

Mr. York also challenges the setting of the summary judgment hearing under Spokane County LCR 40(b)(10). He argues there is an inconsistency between LCR 40(b)(10)'s requirement that all responding documents be served 7 days before the hearing, and CR 56's 28-day requirement. Mr. York conflates these two requirements. The local rule he cites discusses general motion practice, not summary judgment motion practice. Moreover, the local rule he cites discusses when *his response* is due, the state rule discusses when *CSL's moving papers* must be filed and served. But even if there is an inconsistency, CSL complied with the more onerous 28-day requirement.

2.      *Whether CSL Plasma is a health care provider under RCW 4.16.350.*

This court reviews a summary judgment order de novo. *Lunsford v. Saberhagen Holdings, Inc.*, 166 Wn.2d 264, 270, 208 P.3d 1292 (2009). All facts and inferences are

viewed in the light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. CR 56(c).

The burden is on the moving party to show an absence of an issue of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If the moving party submits adequate affidavits to meet its burden, the burden shifts to the nonmoving party to set forth specific facts to rebut the moving party's contentions and show that a genuine issue exists. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). The nonmoving party may not rely on speculation or argumentative assertions to defeat summary judgment. *Id.*

Mr. York contends that CSL Plasma's statute of limitations is governed by RCW 4.16.350, which addresses actions for injuries resulting from health care or related services. He maintains that CSL Plasma is required by federal regulation to have a physician perform their services, making CSL Plasma a health care facility.

Generally speaking, RCW 4.16.350(3) governs the statute of limitations for any civil action for damages occurring as a result of health care that is provided by an entity employing a person licensed to provide health care or related services, including, but not

10

limited to, a hospital, clinic, health maintenance organization, or nursing home. Any civil action against an entity for professional negligence must be commenced within three years of the act or omission causing the injury, or one year after the patient discovered or should have reasonably discovered the injury, whichever occurs later, except that all claims must be brought within eight years after the injury-causing act or omission. RCW 4.16.350(3).

The time for commencement of an action is tolled "upon proof of fraud, intentional concealment, or the presence of a foreign body not intended to have a therapeutic or diagnostic purpose or effect, until the date the patient or the patient's representative has actual knowledge of the act of fraud or concealment, or of the presence of the foreign body; the patient or the patient's representative has one year from the date of the actual knowledge in which to commence a civil action for damages." RCW 4.16.350(3).

A cause of action for an injury resulting from health care is addressed in chapter 7.70 RCW. While the chapter does not supply a definition of "health care," the term has been defined by Washington courts as "'the process in which [a physician is] utilizing the skills which he [or she] had been taught in examining, diagnosing, treating or caring for the plaintiff as his [or her] patient.'" *Wright v. Jeckle*, 104 Wn. App. 478, 481, 16 P.3d

1268 (2001) (alterations in original) (quoting *Branom v. State*, 94 Wn. App. 964, 969-70, 974 P.2d 335 (1999)).

Here, RCW 4.16.350 does not apply to Mr. York's personal injury claim because CSL Plasma is not a health care provider. While CSL Plasma may be required to employ a physician, it does not provide health care services. In *Doe v. Puget Sound Blood Center*, 117 Wn.2d 772, 819 P.2d 370 (1991), the court held that a person donating blood is not seeking treatment and is not protected by physician-patient privilege. Similarly, Mr. York was not seeking treatment when he donated plasma. He was not receiving care as a patient. He received compensation for donating plasma. His claim is not for injury occurring as a result of health care, making the statute of limitations in RCW 4.16.350 inapplicable to Mr. York.

3.     *Whether Mr. York's action is time barred under RCW 4.16.080(2).*

RCW 4.16.080(2) describes the following actions as being barred by a three-year statute of limitations: "An action for taking, detaining, or injuring personal property, including an action for the specific recovery thereof, or for any other injury to the person or rights of another not hereinafter enumerated." Mr. York argues that the quoted subsection has no application to his claim because his claim does not involve personal property. Mr. York's argument ignores the last phrase, "or for other any injury to the

12

person . . . not hereinafter enumerated." This catch-all phrase has long been applied to personal injury actions, such as Mr. York's action. *See In re Estates of Hibbard*, 118 Wn.2d 737, 826 P.2d 690 (1992); *Germain v. Pullman Baptist Church*, 96 Wn. App. 826, 980 P.2d 809 (1999); *Hansen v. Watson*, 16 Wn. App. 891, 559 P.2d 1375 (1977).

"The general rule in ordinary personal injury actions is that a cause of action accrues at the time [of] the act or omission." *Hibbard*, 118 Wn.2d at 744. However, under the discovery rule, the statute of limitations will not begin to run until the plaintiff discovers, or should have discovered with the exercise of due diligence, the facts giving rise to the cause of action. *Clare v. Saberhagen Holdings, Inc.*, 129 Wn. App. 599, 123 P.3d 465 (2005). The cause of action accrues under the discovery rule when a party knows or should have known the essential elements of the cause of action including duty, breach, causation, and damages. *Green v. A.P.C.*, 136 Wn.2d 87, 95, 97, 960 P.2d 912 (1998).

"The discovery rule does not require a plaintiff to understand all the legal consequences of the claim." *Id.* at 95. "The general rule in Washington is that when a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the actual harm. The plaintiff is charged with what a reasonable inquiry would have

discovered." *Id.* at 96. The injured plaintiff must exercise due diligence to discover the harm and the cause. *Id.* at 95.

Here, based on the record interpreted in the light most favorable to Mr. York, his cause of action accrued no later than when he was diagnosed with staphylococcus aureus by Dr. Wang on September 11, 2009. Mr. York knew of his skin condition and suspected CSL Plasma's inoculations as the cause of the injury. He noticed skin lesions after the first inoculation and asked CSL Plasma about the injury. Mr. York was on notice that the injury could be caused by CSL Plasma's process. He was warned in the informed consent agreement that skin lesions could be a side effect of the process. Dr. Wang's notes verify that CSL Plasma's process was investigated as a cause of the injury. While there was no irrefutable proof at the time of the September 11, 2009 follow-up visit that CSL Plasma was the definite cause of his medical condition, Mr. York had enough information to connect CSL Plasma to the injury to establish the essential elements of a personal injury claim. Were we to otherwise hold that a plaintiff's cause of action is tolled until he has sufficient facts to irrefutably establish causation, many actions for personal injuries never would be time-barred. There is no authority which would support such an extreme holding.

Thus, Mr. York's cause of action accrued no later than the September 2009 follow-up visit. The three-year statute of limitations of RCW 4.16.080(2) lapsed in September 2012. Mr. York did not serve his personal injury complaint on CSL Plasma until September 12, 2013. His claim was time-barred. The trial court did not err in granting summary judgment in favor of CSL Plasma.

Affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Siddoway, C.J.

Brown, J.

15