IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SHARON SHEPARD, | ) | |
| | ) | No. 31740-4-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID HOLMES and LORRAINE | ) | |
| HOLMES, | ) | |
| | ) | |
| Defendants, | ) | UNPUBLISHED OPINION |
| | ) | |
| ERA SUN RIVER REALTY and | ) | |
| CHICAGO TITLE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Respondents. | ) | |

SIDDOWAY, C.J. — Sharon Shepard appeals the trial court's summary judgment dismissal of misrepresentation and related claims she asserted against ERA Sun River Realty and Chicago Title Insurance Company, and its denial of her motion for leave to amend her complaint to assert a contract claim against Sun River.

The trial court properly concluded that her causes of action all accrued in July 2007 and were time barred by the time she sued in December 2012. The denial of Ms. Shepard's motion for leave to amend is affirmed on the basis that she had no viable

breach of written contract claim against Sun River and amendment would have been futile. We affirm the trial court in all respects and award attorney fees and costs on appeal to Sun River.

FACTS AND PROCEDURAL BACKGROUND

In July 2007, Sharon Shepard and her former husband entered into a real estate contract to purchase a parcel of land located in Benton County as an investment property. The purchase and sale agreement described the property as "Lots 1, 2, 3, & 4 Short Plat #865." Clerk's Papers (CP) at 107. Ms. Shepard believed that the property consisted of four lots that could be re-sold individually.

Chicago Title Insurance Company issued a preliminary commitment and title insurance policy in connection with the sale. The policy described the covered property as "Lots 1, 2, 3 and 4, as delineated on Short Plat No. 865" and included a copy of the short plat that depicted four lots. CP at 141. The short plat copy bore a stamp that stated, "This plat is for your aid in locating your land with reference to streets and other parcels. While this plat is believed to be correct, the company assumes no liability for any loss occurring by reason of reliance thereon." CP at 145.

In the summer of 2011, Ms. Shepard decided to sell two of the lots. She contacted the Benton County Planning Department to inquire about whether one well could be used as a community well for two of the four lots and to learn about the septic requirements. According to Ms. Shepard, the head of the planning department told her at that time that

2

in 1998 the owner of the property had recorded a "Deed of Consolidation" that consolidated the four lots into a single parcel. CP at 27. The planning department head reportedly told her that she could have rescinded the deed in 2007 after she purchased the property, but that she could no longer sell the lots separately because county density requirements had since changed. Our record includes no declaration of the planning department head nor does it contain a copy of the Deed of Consolidation. We rely, as the parties evidently did, on Ms. Shepard's report of what she was told.[1]

Ms. Shepard filed a claim of loss with Chicago Title, which responded after investigation that neither the existence of the consolidation deed nor the intervening change in zoning requirements presented a loss insured by the title policy.

In December 2012, Ms. Shepard filed a complaint for breach of contract; misrepresentation; violations of the Washington Consumer Protection Act (CPA), chapter 19.86 RCW; and failure to pay an insurance claim in bad faith. She named as defendants David and Lorraine Holmes, who had sold the property to Ms. Shepard and her former husband; Sun River, the Holmeses' real estate agent; and Chicago Title. The complaint alleged that Ms. Shepard was told by the Holmeses, "through their real estate agent ERA," and "by others including Chicago Title," that the individual lots could be separately sold, and that these misrepresentations induced her to purchase the property.

---

[1] Ms. Shepard's amended complaint describes the consolidation instrument as a quitclaim deed "purport[ing] . . . to consolidate the four parcels back into one." CP at

3

CP at 2. She alleged that the property had less value if it had to be sold as a single, undivided parcel rather than as four separate lots.

In the section of her complaint entitled "Causes of Action," Ms. Shepard alleged a claim for breach of contract against the Holmeses, claims of misrepresentation and violation of the CPA against Sun River, and claims of misrepresentation and bad faith (failure to pay a covered claim and disclose recorded defects of title) against Chicago Title.

Within a couple of months of Ms. Shepard's filing the complaint, Sun River moved to dismiss her misrepresentation and CPA claims against it pursuant to CR 12(b)(6), arguing that the claims were time barred on their face. Ms. Shepard responded that the discovery rule applied to her claims, with the result that the statutes of limitation did not begin to run until she discovered the existence of the consolidation deed in 2011. She also brought to the court's attention that she had not had a copy of her real estate purchase and sale agreement at the time she filed her complaint and had only recently been able to obtain a copy, by subpoena.

The trial court conducted hearings on Sun River's motion in March. Because the parties had submitted declarations addressing matters outside of the scope of the pleadings, the trial court treated the motion as one for summary judgment. At the conclusion of the hearings, the trial court orally ruled that the recorded consolidation

314.

4

deed constituted constructive notice to all subsequent purchasers of the property, with the result that Ms. Shepard's causes of action for negligent misrepresentation and violation of the CPA accrued no later than the closing of her purchase of the property in July 2007. Because more than five years had passed before she filed her complaint, the three- and four-year statutes of limitations for the misrepresentation and CPA claims, respectively, had run.

In ruling on the motion, the court observed that while Ms. Shepard had made reference in her opposition to a recently discovered contract, "[t]here is no claim for breach of contract that has been filed in this case in regard to [Sun River]." Report of Proceedings (RP) (Mar. 29, 2013) at 29.

Ms. Shepard immediately responded that "the complaint does allege a breach of contract." *Id.* She asked, if her pleading was not sufficiently specific, that she be permitted to file a motion to amend the complaint to assert a claim of breach of written contract claim against Sun River—a claim subject to a six-year statute of limitations, and that would not be time barred. *See* RCW 4.16.040(1). Without entertaining further argument, the trial court reiterated that it had reviewed the complaint, saw no breach of contract claim against Sun River, and was denying the request for leave to file a motion to amend.

In early May, after being served with Sun River's proposed order dismissing her claims and a notice of presentment, Ms. Shepard filed a written motion for leave to

5

amend her complaint along with a proposed amended complaint. The amended complaint included an allegation that Sun River was a "signatory party" to the purchase and sale agreement by which Ms. Shepard and her former husband purchased the property. CP at 313.

The court addressed Sun River's proposed dismissal order, a request by Sun River for attorney fees, and Ms. Shepard's motion to amend at a hearing held on May 17. At Sun River's request, the court first entertained presentment of the order dismissing the claims against Sun River. The court signed the order as presented. It then addressed Ms. Shepard's motion to amend.

With the order of dismissal having been entered, Sun River argued that it was no longer a party to the action, rendering Ms. Shepard's motion to amend untimely, and alternatively, that amendment was futile. The trial court agreed that the motion to amend was untimely and denied it.

The court awarded Sun River attorney fees in the amount of $8,413, finding that by the terms of the real estate purchase and sale agreement, Sun River, as the real estate broker or licensee, was entitled to its attorney fees from litigation arising out of the real estate transaction.

Meanwhile, in early April, Chicago Title had filed its own motion for summary judgment. It argued, as Sun River had, that Ms. Shepard's misrepresentation and CPA claims were time barred. It also argued that her bad faith claims failed as a matter of law

6

on the merits because it was undisputed that (1) it had investigated and resolved her claim under its policy, (2) it had no duty to disclose the consolidation deed, and (3) its title policy did not cover the claim.

Once again, Ms. Shepard argued that the court should apply the discovery rule in determining when her causes of action accrued. She did not respond to Chicago Title's arguments that her bad faith claims failed as a matter of law on the merits.

The hearing on Chicago Title's motion was held in late May. The court granted the motion.

Ms. Shepard appeals the orders dismissing her claims against Sun River and Chicago Title, the court's denial of her oral and written motions for leave to amend her complaint, and the order awarding attorney fees to Sun River.

## ANALYSIS

Ms. Shepard fails to make assignments of error in her opening brief, but it is clear from her argument that she asserts four. She argues that the court erred or abused its discretion in (1) concluding that her misrepresentation and CPA claims were time barred, (2) concluding that her original claim did not sufficiently plead a contract claim against Sun River, (3) denying her leave to amend her complaint to assert a contract claim, and (4) awarding attorney fees to Sun River. We address the issues in turn.

7

### I. The trial court correctly concluded that the misrepresentation and CPA claims were time barred

A three-year statute of limitations applies to claims for misrepresentation and fraud. RCW 4.16.080(4) (fraud); *Davidheiser v. Pierce County*, 92 Wn. App. 146, 156 n.5, 960 P.2d 998 (1998) (negligent misrepresentation is subject to limitations period for fraud). A four-year statute of limitations applies to CPA claims. RCW 19.86.120; *Pickett v. Holland Am. Line-Westours, Inc.*, 145 Wn.2d 178, 196, 35 P.3d 351 (2001).

RCW 4.16.080(4) provides that an action for relief upon the ground of fraud is "not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." RCW 19.86.120 provides more generally that a claim for damages under the CPA is barred unless commenced "within four years after the cause of action accrues."

The general rule is that "[a] cause of action accrues and the statute of limitations begins to run when a party has the right to apply to a court for relief." *O'Neil v. Estate of Murtha*, 89 Wn. App. 67, 69-70, 947 P.2d 1252 (1997). A party has the right to apply to a court for relief "when the plaintiff can establish each element of the action." *Hudson v. Condon*, 101 Wn. App. 866, 874, 6 P.3d 615 (2000).

The discovery rule is an exception to the general rule of accrual, and has been applied by Washington courts to claims where "injured parties do not, or cannot, know they have been injured." *In re Estates of Hibbard*, 118 Wn.2d 737, 744-45, 826 P.2d 690

8

(1992). "The decision to extend the discovery rule to a cause of action is essentially a matter of judicial policy." *Denny's Rests., Inc. v. Sec. Union Title Ins. Co.*, 71 Wn. App. 194, 216, 859 P.2d 619 (1993). Where the discovery rule applies, "a cause of action accrues when the plaintiff, through the exercise of due diligence, knew or should have known the basis for the cause of action." *Green v. Am. Pharm. Co.*, 86 Wn. App. 63, 66, 935 P.2d 652 (1997), *aff'd*, 136 Wn.2d 87, 960 P.2d 912 (1998).

RCW 4.16.080(4) effectively codifies the discovery rule as the basis on which a claim for fraud or misrepresentation accrues. *See First Md. Leasecorp v. Rothstein*, 72 Wn. App. 278, 282, 864 P.2d 17 (1993) (characterizing RCW 4.16.080(4) as "a discovery-rule exception to the 3-year accrual period"). In applying the discovery rule, actual knowledge of fraud will be inferred for purposes of the statute if the aggrieved party, by the exercise of due diligence, could have discovered it. *Strong v. Clark*, 56 Wn.2d 230, 232, 352 P.2d 183 (1960). The discovery rule can also apply to CPA claims. *Pickett v. Holland Am. Line-Westours, Inc.*, 101 Wn. App. 901, 913, 6 P.3d 63 (2000), *rev'd on other grounds by* 145 Wn.2d 178.

One instance in which actual discovery will be inferred is where the facts constituting the fraud were a matter of public record. As our Supreme Court explained in *Davis v. Rogers*, 128 Wash. 231, 236, 222 P. 499 (1924), where facts constituting fraudulent acts were matters of public record, and thus "easily ascertainable," the public record serves as "constructive notice to all the world of its contents." "[T]he defrauded

9

party cannot be heard to say that he has not discovered the facts showing the fraud within the limit of the statute if the facts should have been discovered prior to that time by anyone exercising a reasonable amount of diligence." *Id.* at 235-36.

The court applied this principle in *Strong*, which dealt with constructive notice of an alleged fraudulent conveyance. Owners of a farm entered into a written lease of their farm ground that included a grant to the tenants of an option to purchase the farm. The lease and option were recorded in 1952. The tenants exercised the option in 1956, and the owner-lessors accepted payment and executed a deed. *Strong*, 56 Wn.2d at 231. Two years later, the now-former owner-lessors were adjudicated bankrupts. *Id.* The bankruptcy trustee, acting on behalf of creditors, thereafter sued to set aside the deed on the basis that the option included in the lease was supported by inadequate consideration and was a fraudulent conveyance. The trial court dismissed the suit, finding that it was barred by the statute of limitations. *Id.* at 232.

On appeal, our Supreme Court held that the action was properly dismissed. Because actual knowledge of fraud will be inferred if the aggrieved party, by the exercise of due diligence, could have discovered it, the creditors were deemed to have discovered the alleged inadequacy of the consideration for the option when the lease was recorded in 1952. The recording gave "constructive notice to all persons that the owners had given the tenants an option to purchase the property for the consideration specified therein." *Id.* at 233. As observed in *Aberdeen Federal Savings & Loan Association v. Hanson*, 58

10

Wn. App. 773, 777, 794 P.2d 1322 (1990), *Strong* stands for the proposition that "the recording of an instrument affecting real property is constructive notice to all those *who subsequently acquire an interest in the property and have reason to refer to the record in which the document is recorded.*"

On the basis of this authority, Sun River and Chicago Title argued that Ms. Shepard's misrepresentation and CPA claims accrued at the time she closed her purchase of the Holmeses' property in July 2007, with the result that the three- and four-year statutes of limitations had run before she commenced her lawsuit five and one-half-years later, in December 2012.

We review summary judgment decisions de novo, performing the same inquiry as the trial court. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). In reviewing dismissal of a claim on summary judgment, we "consider[ ] the facts and the inferences from the facts in a light most favorable to the nonmoving party." *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is appropriate where there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c).

Like the option to purchase in *Strong*, the deed of consolidation in this case was subject to the recording statute, RCW 65.08.070. "Conveyances" required to be recorded under the statute include "every written instrument by which any estate or interest in real property is created, transferred, mortgaged or assigned *or by which the title to any real*

11

*property may be affected.*" RCW 65.08.060(3) (emphasis added). The deed of consolidation affected title to the property.

When she purchased the property in July 2007, Ms. Shepard was therefore on constructive notice of the existence of the consolidation deed. Any statement or omission that she contends misled her had to have taken place before she purchased in order to have proximately caused her loss. If she sustained damage as a result of the alleged misrepresentation, it was because she acquired property that no longer enjoyed the development rights that vested when the parcel was short platted; that damage arose as soon as she closed the purchase. Because these and all other elements of misrepresentation and any violation of the CPA would have existed on the date Ms. Shepard purchased the property, Sun River and Chicago Title correctly argued that her misrepresentation and CPA claims accrued, and the statutes of limitations began to run, at that time.[2]

---

[2] The six elements of negligent misrepresentation are (1) that a defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in business transactions, (3) the defendant was negligent in obtaining or communicating false information, (4) the plaintiff relied on the false information supplied by the defendant, (5) that the plaintiff's reliance on the false information supplied by the defendant was justified, and (6) the false information was the proximate cause of damages to the plaintiff. *Borish v. Russell*, 155 Wn. App. 892, 905 n.7, 230 P.3d 646 (2010).

To establish a CPA violation, the plaintiff must prove (1) an unfair or deceptive act or practice, that (2) occurs in trade or commerce, (3) impacts the public interest, (4) and causes injury to the plaintiff in her business or property, and (5) the injury is

Ms. Shepard objects that applying the rule in *Strong* transforms the limitation period under RCW 4.16.080(4) into a disfavored statute of repose, because the limitation period would have begun running in 1998 and expired even before she purchased the property. "A statute of repose potentially bars a suit before the cause of action even arises." *Rothstein*, 72 Wn. App. at 282. Ms. Shepard cites *Strong* as holding that "'[w]hen the facts upon which the fraud is predicated are contained in . . . the public record . . . *the statute of limitations begins to run at the date of the recording of the instrument.*'" Br. of Appellant at 18 (emphasis added) (quoting *Strong*, 56 Wn.2d at 232).

It is a mistake to read this statement in *Strong* in isolation. *Strong* did not purport to change the law as to when a cause of action accrues. Read in its entirety, it did not hold that the recording of an instrument alone triggers the limitation period for any misrepresentation ever made thereafter about the instrument's effect on title. Implicit in the decision, even if not stated, is that with the recording of the lease in 1952, *all* of the elements of the creditors' fraudulent conveyance claims existed. It was the fact that the creditors' fraudulent conveyance action *accrued* in 1952 that caused the statute of limitations to begin running, not the stand-alone fact that the lease was recorded at that time.

causally linked to the unfair or deceptive act. *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 602, 200 P.3d 695 (2009).

13

Here, the trial court applied RCW 4.16.080(4) and RCW 19.86.120 as statutes that limited the time within which Ms. Shepard must bring suit after her causes of action accrued. The limitations periods did not begin to run in 1998, because she had not yet been allegedly misled, taken action in reliance, and suffered resulting damage. The same is true for her claims for violation of the CPA, which require proof of both "an unfair or deceptive act" and a resulting injury. *Westcott v. Wells Fargo Bank, N.A*, 862 F. Supp. 2d 1111 (W.D. Wash. 2012) (CPA claim accrued on or before date of closing). The trial court (properly) recognized that it was not until the closing of her purchase in July 2007 that all elements of her claims existed and she had the right to apply to a court for relief.

Ms. Shepard also contends that the constructive notice doctrine does not overcome her right to rely on the "actual" representations of the parties; by "actual," she appears to mean "explicit." But the Washington cases on which she relies do not support her contention. None says or implies that explicit representations are treated differently from implicit representations when a purchaser has constructive knowledge of true facts. Ms. Shepard provides no authority or reasoned argument as to why well-settled case law establishing that recorded documents provide constructive notice do not apply. *See* RAP 10.3(a)(6); *McKee v. Am. Home Prods. Corp.*, 113 Wn.2d 701, 705, 782 P.2d 1045 (1989) ("We will not consider issues on appeal that . . . are not supported by argument and citation of authority.").

14

Both Sun River and Chicago Title argue that the trial court's orders dismissing Ms. Shepard's claims against them on summary judgment can be affirmed on the alternative basis that no misrepresentations were made at the time Ms. Shepard purchased the property. While there is merit to this argument, we need not address it, since we are able to affirm the trial court on the time bar basis on which it dismissed the claims.

Because undisputed facts established that Ms. Shepard's misrepresentation and CPA claims were time barred, summary judgment was appropriate.

> II.     *The original complaint did not adequately plead a
> breach of contract claim against Sun River*

Ms. Shepard next challenges the trial court's determination that her original complaint failed to allege a breach of contract claim against Sun River.

Under CR 8(a), a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for judgment for the relief to which he deems himself entitled." Pleadings are intended "to give notice to the court and the opponent of the general nature of the claim asserted." *Lightner v. Balow*, 59 Wn.2d 856, 858, 370 P.2d 982 (1962). Complaints are therefore construed liberally "as to do substantial justice." CR 8(f). While a complaint may contain inexpert pleading, "it may not contain insufficient pleading." *Estate of Dormaier v. Columbia Basin Anesthesia, PLLC*, 177 Wn. App. 828, 853, 313 P.3d 431 (2013). A complaint is insufficient if it does not give the defendant "fair notice of what the claim is and the

ground upon which it rests." *Williams v. W. Sur. Co.*, 6 Wn. App. 300, 305, 492 P.2d 596 (1972).

Ms. Shepard quotes isolated phrases from the section of her complaint entitled "Contract Formation," patches them together in a convenient order and, from that, argues that allegations of a contract with Sun River could be inferred. But no such inference could or would reasonably be drawn from the "Contract Formation" section of her complaint. While the section provides background and mentions Sun River, it speaks of only one contract: it alleges that Ms. Shepard "entered into a purchase agreement to purchase the four lots *from the Defendants, Holmes*." CP at 2 (emphasis added).

In the "Causes of Action" section of the complaint, Ms. Shepard specifies the claims for relief that she asserts against each party. She asserts no claim for relief for breach of contract against Sun River.

At best, Ms. Shepard's complaint contains ambiguous language when it states, in its section entitled "Default/Breach," that the Holmeses, Sun River, and Chicago Title "have all breached their agreements with Plaintiff and have caused considerable monetary damage." CP at 3. Nonetheless, by failing to identify when any contract was made with Sun River, the substance of the contract, or the respect in which it was breached, this allegation of a breach, without more, does not provide fair notice of a contract claim and the ground upon which it rests.

By no reasonable reading of Ms. Shepard's complaint, however broadly construed, does it adequately allege a breach of contract claim against Sun River. The trial court did not err.

> *III. Because the contract claim against Sun River asserted in Ms. Shepard's proposed amended complaint would have been futile, the denial of her written motion to amend could not constitute an abuse its discretion*

Ms. Shepard next argues that the trial court abused its discretion in denying her leave to file an amended complaint. Because Sun River had already filed a responsive pleading when Ms. Shepard sought to amend her complaint, her right to amend as a matter of course had expired. CR 15(a). She could amend the complaint "only by leave of court or by written consent of the adverse party." *Id.*

Although leave to amend is to be "freely given when justice so requires," *id.*, "[t]he decision to grant leave to amend the pleadings is within the discretion of the trial court." *Wilson v. Horsley*, 137 Wn.2d 500, 505, 974 P.2d 316 (1999). The trial court's determination "will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

"The touchstone for the denial of a motion to amend is the prejudice such an amendment would cause to the nonmoving party." *Wilson*, 137 Wn.2d at 505. "In determining whether prejudice would result, a court can consider potential delay, unfair

17

surprise, or the introduction of remote issues." *Karlberg v. Otten*, 167 Wn. App. 522, 529, 280 P.3d 1123 (2012). A court may also consider whether the new claim is futile or untimely. *Ino Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 142, 937 P.2d 154, 943 P.2d 1358 (1997). Where, as here, a motion to amend is made "after the adverse granting of summary judgment, the normal course of proceedings is disrupted and the trial court should consider whether the motion could have been timely made earlier in the litigation." *Doyle v. Planned Parenthood of Seattle-King County, Inc.*, 31 Wn. App. 126, 130-31, 639 P.2d 240 (1982).

In this case, the complaint was dated November 14, 2012. It appears to have been served on, or delivered to, the defendants or their lawyers in December. Sun River appeared through its lawyer on January 25, 2013. It filed its motion to dismiss Ms. Shepard's complaint one month later.

Ms. Shepard orally moved to amend the complaint to add a breach of contract claim against Sun River on March 29 (within three months of commencing her action), after the trial court ruled that her misrepresentation and CPA claims were barred by the statute of limitations. After the court denied her oral motion as untimely, she filed a written motion for leave to amend on May 9, less than five months after commencing her action. That motion was also denied.

18

The court reasonably denied Ms. Shepard's oral motion to amend her complaint made at the March 29 hearing, because a copy of her proposed amended pleading was not provided to the court and affected parties as required by CR 15(a).

The written motion filed thereafter would present a much more difficult issue had the proposed amended complaint pleaded a potentially meritorious breach of contract claim, especially given Ms. Shepard's showing that she had been unable to obtain a copy of the written contract until after commencing the litigation. Because the parties were only five months into the litigation, it would have been difficult to find prejudice to Sun River. Sun River's successful gambit of having the trial court enter its order of dismissal before the motion to amend was heard would not make the issue any easier, because the trial court's decision to dismiss the claims before considering the request to amend would itself be reviewable for abuse of discretion.

We need not decide whether the trial court abused its discretion in treating the motion for leave to amend as untimely, however, because we can affirm denial of the motion on the basis that amendment would have been futile. We may affirm the trial court on any ground supported by the record whether or not the court considered that ground. *LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989). It is clear as a matter of law that Ms. Shepard pleaded no viable contract claim against Sun River.

While Sun River was a signatory to the agreement, it signed in its capacity as the Holmeses' disclosed agent. "One who makes a contract only on account of another

19

ordinarily does not himself contemplate responsibility for its performance. His function is performed if he causes a contract to be made between his principal and the third person." RESTATEMENT (SECOND) OF AGENCY § 328 (1958); *Griffiths & Sprague Stevedoring Co. v. Bayly, Martin & Fay, Inc.*, 71 Wn.2d 679, 686, 430 P.2d 600 (1967) ("[W]hen an agent makes a contract on behalf of a disclosed or partially disclosed principal whom he has power to bind, he does not thereby become liable for his principal's nonperformance.").

Because Sun River was not a party to the purchase and sale agreement, Ms. Shepard cannot point to any duty on Sun River's part arising from the agreement. She alleges that Sun River breached a contract by "misrepresent[ing] the real property as four separate lots" in the multiple listing service listing and the purchase and sale agreement, CP at 316, but a misrepresentation is not a breach of contract unless made by a party who has explicitly represented and warranted in the contract that certain facts are or will be true at the time of closing. Sun River has no duty under the purchase and sale agreement, let alone that duty.

Because amendment of Ms. Shepard's complaint to add a breach of written contract claim would have been futile, the court did not abuse its discretion in denying leave to amend.

20

*IV. The trial court properly awarded attorney fees*

The trial court awarded fees and costs to Sun River based on the following language in the purchase and sale agreement signed by Ms. Shepard:

> ATTORNEY FEES/COSTS AND MEDIATION: If the Buyer, Seller, *or any real estate licensee or broker* involved in this transaction is involved in any dispute relating to this transaction, any prevailing party shall recover reasonable attorney's fees and costs (including those for appeals) which relate to the dispute.

CP at 109 (emphasis added). Ms. Shepard argues it was error to rely on the purchase and sale agreement to award attorney fees because the trial court concluded that Ms. Shepard did not assert a breach of contract claim against Sun River. She does not argue that the fees awarded were unreasonable.

Washington law generally provides for an award of attorney fees when authorized by contract, a statute, or a recognized ground of equity. *Labriola v. Pollard Group, Inc.*, 152 Wn.2d 828, 839, 100 P.3d 791 (2004); *Bingham v. Lechner*, 111 Wn. App. 118, 133-34, 45 P.3d 562 (2002) (stating that the party that prevails in a proceeding to foreclose a deed of trust is entitled to an award of fees if the deed of trust provides for such an award). The contractual right is the source of any entitlement to fees. *Excelsior Mortg. Equity Fund II, LLC v. Schroeder*, 171 Wn. App. 333, 346, 287 P.3d 21 (2012). Whether a specific statute, contractual provision, or recognized ground in equity authorizes an award of attorney fees is a question of law that we review de novo. *Tradewell Grp., Inc. v. Mavis*, 71 Wn. App. 120, 126, 857 P.2d 1053 (1993).

21

The creation of a third party beneficiary contract requires that the parties intend that the promisor assume a direct obligation to a third party at the outset of the contract. *Lewis v. Boehm*, 89 Wn. App. 103, 106, 947 P.2d 1265 (1997) (citing *Burke & Thomas, Inc. v. Int'l Org. of Masters, Mates & Pilots*, 92 Wn.2d 762, 767, 600 P.2d 1282 (1979)). To determine if a third party beneficiary exists, the court should consider the terms of the contract and determine if performance of the contract necessarily and directly benefits a third party. *Id.* (citing *Del Guzzi Constr. Co. v. Global Nw. Ltd.*, 105 Wn.2d 878, 886-87, 719 P.2d 120 (1986)). Where a real estate purchase and sale agreement explicitly provides for a party's payment to the real estate broker under disclosed circumstances, it is clear that the broker is a third party beneficiary to the contract. *Id.*

The trial court's award of attorney fees was not inconsistent with its conclusion that Ms. Shepard could not sue Sun River for breach of contract. A third party beneficiary is one who is not a party to the contract but will receive a direct benefit from the contract. *McDonald Constr. Co. v. Murray*, 5 Wn. App. 68, 70, 485 P.2d 626 (1971). Attorney fees were properly awarded to Sun River.

## V. Attorney fees on appeal

Sun River and Chicago Title both request attorney fees on appeal. RAP 18.1 permits recovery of reasonable attorney fees or expenses on review if applicable law grants that right.

22

As already determined, the purchase and sale agreement provides for Sun River's recovery of attorney fees and costs, including on appeal, if it becomes involved in any dispute relating to the transaction. We award Sun River its reasonable fees and costs on appeal subject to its compliance with RAP 18.1(d).

Chicago Title requests attorney fees on appeal on the basis that Ms. Shepard's appeal is frivolous. "An appeal is frivolous if, considering the entire record, it has so little merit that there is no reasonable possibility of reversal and reasonable minds could not differ about the issues raised." *Johnson v. Mermis*, 91 Wn. App. 127, 137, 955 P.2d 826 (1998). We do not regard Ms. Shepard's arguments as frivolous, and deny Chicago Title's request for fees.

Affirmed, with an award of fees and costs on appeal to Sun River.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, C.J.

WE CONCUR:

Brown, J.

Korsmo, J.

23