IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MARY E. NIELSON, an individual, | ) | |
| | ) | No. 35531-4-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HOUSEHOLD FINANCE | ) | UNPUBLISHED OPINION |
| CORPORATION III; CALIBER HOME | ) | |
| LOANS, INC., d/b/a CALIBER LOANS, | ) | |
| INC., U.S. BANK TRUST NATIONAL | ) | |
| ASSOCIATION; AND LSF9 MASTER | ) | |
| PARTICIPATION TRUST, | ) | |
| | ) | |
| Respondents. | ) | |

KORSMO, J. — Mary Nielson appeals from the dismissal of her claims against

Household Finance Corporation III (HFC), contending that the trial court erroneously

ruled that the statute of limitations had expired on her claims. Concluding that there are

factual issues to resolve concerning when Ms. Nielson discovered the alleged fraud, we

reverse.

FACTS

We state the facts in the light most favorable to Ms. Nielson.[1] Ms. Nielson and

her then-husband purchased a mobile home with the proceeds of a loan issued by HFC.

_____

[1] *Didlake v. State*, 186 Wn. App. 417, 422, 345 P.3d 43 (2015).

The loan was secured solely by the home because the Nielsons did not own any real estate. The home subsequently was placed on land owned by Ms. Nielson's father.

Sometime thereafter, Ms. Nielson inherited the land from her father, free and clear of any debt. The couple refinanced the home loan through HFC in January 2006. They drove from Quincy to Yakima to sign the refinancing papers, arriving shortly before the end of the business day. Because it was late in the day, there was no time to read the paperwork. Told that the refinancing was secured in the same manner as the original loan, the couple signed the documents without reading them.[2]

In fact, the loan document bears the legend on the first page: "YOU ARE GIVING US A SECURITY INTEREST IN THE REAL ESTATE LOCATED AT THE ABOVE ADDRESS." Clerk's Papers (CP) at 291. The same notice, but referencing the deed of trust, is carried on the second page of the loan agreement. CP at 292. Ms. Nielson avers that, even if she had read the document, she would not have understood that the real estate was also encumbered. The deed of trust was recorded in Grant County in January 2006. That document describes the secured property using a metes and bounds description without reference to a street address; it also references the tax parcel identification numbers assigned to the home and to the land. CP at 177.

---

[2] These facts come from an affidavit filed by Ms. Nielson. Our record does not include any evidence from Mr. Nielson.

Represented by counsel, the couple filed, and subsequently dismissed, bankruptcy petitions in 2010, 2011, and 2012. The status of the land, as identified by the couple's filings, is reflected in the schedules filed with the bankruptcy court. In 2010, the "Schedule A—Real Property" indicates that the couple owned in fee simple property located at 2572 Beverly Burke Road in Quincy. That schedule reflects that a secured claim of $47,800 against the property. CP at 723. The Schedule D listing of secured creditors recognizes that HFC holds a claim worth $47,800 against the 2572 Beverly Burke Road property. CP at 725. Those same documents in the 2011 bankruptcy filing report the exact same information. CP at 740, 742.

The 2012 filing states the information differently. The Schedule A—Real Property filing distinguished between mobile home and land, attributing values of $100,000 to the former and $10,000 to the latter.[3] CP at 248. The Schedule D listing recognized a "Home Mortgage 1st" involving a "residence" (described as 1993 Marlette Triple Wide) and "location" (2572 Beverly Burke Road S.) with a value of $100,000. CP at 251. The creditor is identified as HFC and the claim is valued at $45,928. CP at 251.

The Nielsons dissolved their marriage by a decree of dissolution entered November 8, 2013. Ms. Nielson contends repeatedly in her pleadings that the decree awarded the home and land to her, and the trial court stated that Ms. Nielson now held

---

[3] The same distinction was drawn in the Schedule C (exempt property) filing. CP at 249.

3

the property as her own.[4]  However, the decree of dissolution provided in our record

expressly states, on two different pages, that the "Parties will share property at 2572

Beverly Burke Rd."  CP at 257, 258.

HFC assigned the loan to Caliber Home Loans in the summer of 2015.  Soon

thereafter, Caliber contacted Ms. Nielson about the loan.  In their discussion, Nielson

learned that HFC and Caliber believed that the security interest attached to both the land

and the home.  Over the next year, her attorney and the companies traded letters on the

topic.  Finally, in September 2016, Ms. Nielson filed an action against HFC[5] alleging

fraud, and related claims involving violations of state statutes, over the January 2006 loan

processing.

The defendants moved to dismiss, citing to the statute of limitations.  Ms. Nielson

argued that she only discovered the fraud in 2015 and filed suit the following year after

negotiations failed.  The trial court, in a thoughtful letter opinion, explained that the

plaintiff had constructive notice of the security interest due to the recording on file in

Grant County.  After discussing when each of the claims had accrued, and determining

that all were untimely, the court ordered the action dismissed.  Ms. Nielson moved for

---

[4] CP at 397 n.1.
[5] Additional defendants were added, and theories of recovery modified, over three subsequent amendments to the complaint.  All defendants other than HFC have been dismissed from the case and are no longer involved in this litigation.

4

reconsideration. Believing itself bound by appellate court authority, the trial court denied reconsideration.

Ms. Nielson timely appealed the dismissal of HFC. A panel heard oral argument of the case.

ANALYSIS

The sole issue presented is whether this action is barred by the statute of limitations. We conclude that there is a factual question concerning when Ms. Nielson discovered that the security interest included the land as well as the home.

As with an appeal from a summary judgment ruling, this court reviews appeals from a CR 12(b) dismissal de novo. *Tenore v. AT & T Wireless Servs.*, 136 Wn.2d 322, 329-330, 962 P.2d 104 (1998). Dismissal "is appropriate only if it appears beyond doubt that the plaintiff cannot prove any set of facts which would justify recovery." *Id*. at 330.

Ms. Nielson's claims alleged violations of the Consumer Loan Act (CLA), ch. 31.04 RCW, the Consumer Protection Act (CPA), ch. 19.86 RCW, fraud, and negligent misrepresentation. Violation of the CLA is actionable under the CPA. RCW 31.04.208. The statute of limitations for CPA claims is four years after accrual, RCW 19.86.120, while the statute of limitations is three years after accrual for the fraud and negligent misrepresentation claims. RCW 4.16.080(4).

This court has recognized that "RCW 4.16.080(4) effectively codifies the discovery rule" for fraud and negligent misrepresentation claims. *Shepard v. Holmes*, 185 Wn. App. 730, 739, 345 P.3d 786 (2014). That rule also applies to CPA claims. *Id.* at 740. Under the discovery rule, an action does not accrue until the plaintiff has discovered, or reasonably should have discovered, the facts giving rise to the claim. RCW 4.16.080(4); *Sabey v. Howard Johnson & Co.*, 101 Wn. App. 575, 593, 5 P.3d 730 (2000); *First Maryland Leasecorp v. Rothstein*, 72 Wn. App. 278, 283, 864 P.2d 17 (1993).

The trial court relied on the filing of the deed of trust as notice to Ms. Nielson that HFC claimed an interest in her real estate. "When an instrument involving real property is properly recorded, it becomes notice to all the world of its contents." *Strong v. Clark*, 56 Wn.2d 230, 232, 352 P.2d 183 (1960). "When the facts upon which the fraud is predicated are contained in a written instrument which is placed on the public record, there is constructive notice of its contents, and the statute of limitations begins to run at the date of the recording of the instrument." *Id.*; *accord Shepard*, 185 Wn. App. at 740 ("One instance in which actual discovery will be inferred is where the facts constituting the fraud were a matter of public record."); *W. Wash. Laborers-Emp'rs Health & Sec. Tr. Fund v. Harold Jordan Co.*, 52 Wn. App. 387, 391, 760 P.2d 382 (1988) ("[W]hen the facts upon which the fraud is predicated are contained in a written instrument which is placed on public record, the aggrieved party receives constructive notice of its contents.

Thus, the statute of limitations begins to run from the date of the recording of the instrument.").

Here, Ms. Nielson argues that her claim did not accrue until she was alerted by the lenders that the security interest attached to the land. In turn, HFC argues that the deed of trust filed in January 2006 constituted notice to Ms. Nielson and the world that there was a security interest in the land, leading to an expiration of the statute of limitations in early 2010. HFC points to *Shepard*, a relatively recent case from this court, as controlling. We think that case, and the others cited above, are distinguishable because they involve notice to third parties, where here the party claiming fraud is a signatory to the agreement.

*Shepard* involved a land purchase in Benton County; the purchaser allegedly had been misled by a plat map about the ability to subdivide the property and was unaware that the former owner had consolidated the four lots. 185 Wn. App. at 734. She sued the real estate company and the title company for misrepresentation. *Id*. at 733. This court held that the public filing of the consolidation deed put the plaintiff on notice at the time she purchased the property. Since her action accrued at that time, rather than when she learned from the county that the property was now only one lot, her action was barred by the statute of limitations. *Id*. at 741-743.

That situation is different from this one. HFC essentially is asking that we double down and conclude that the allegedly fraudulent document has extra notice value to the plaintiff because it was filed after she signed it. We think the parties to a contract have even less incentive to check the public record about the contents of their agreements than they would have at the time of signing, or immediately thereafter when they presumably received a copy of the contract. They are not in the same position as third parties who otherwise are unaware of the existence of an agreement, lien, etc., and are expected to rely on the public record. First parties have no need to rely on the public record for their own agreements.

We think that there is a factual question in this case about when Ms. Nielson knew about the lien extending to the land. Three facts, in combination, bring us to that conclusion: (1) there had been a previous loan, secured only by the home; (2) the representation that the agreement was the same as that previous loan, arguably negating the need to read the new agreement; and (3) there was insufficient time to read the agreement before the end of the business day.[6] We think that the CR 12(b)(6) motion foundered on these facts, which would justify a trier-of-fact to conclude that Ms. Nielson was unaware that the lender's lien extended to the real estate beneath her mobile home

---

[6] A failure or a refusal to read the contract would not justify relief.

8

until foreclosure was threatened. Whether her allegations are credible is a matter for a fact-finder to take up.

Reversed and remanded for further proceedings.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Siddoway, J.

9