THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ATM SHAFIQUL KHALID, an individual and on behalf of similarly situated , Xencare Software, Inc., | ) ) ) ) | No. 80508-8-I |
| | ) | DIVISION ONE |
| Appellant, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) ) | |
| MICROSOFT CORPORATION, a Washington Corporation, | ) ) ) | |
| Respondent. | ) ) ) | |

ANDRUS, A.C.J. — ATM Shafiqul Khalid appeals the dismissal of his lawsuit against Microsoft pursuant to CR 12(b)(6). He argues the trial court erred in concluding that many of his fourteen causes of action were time-barred and that he failed to state cognizable claims as to others. We affirm in substantial part but reverse the dismissal of one of Khalid's Consumer Protection Act (CPA) claims,[1] his claims of breach of contract and breach of the implied covenant of good faith and fair dealing, and his request for declaratory relief under the Uniform Declaratory Judgment Act (UDJA).[2]

---

[1] RCW 19.86.020.
[2] Ch. 7.24. RCW

Citations and pin cites are based on the Westlaw online version of the cited material.

## FACTS[3]

Khalid is a software engineer who has worked for either Microsoft or its vendors since 1998. He is also an inventor. He has published 14 research papers in journals and conference proceedings and has been named inventor in 20 patents issued by the United States Patent and Trademark Office (USPTO). He is an expert in computer software, operating systems, cloud computing, and virtualization.

In October 2012, the USPTO issued patent no. 8,286,219 (the '219 Patent) for computer systems security software entitled "Safe and Secure Program Execution Framework." This invention began in 2005, while Khalid was working with friends and a partner to protect computer systems from viruses and spyware. Khalid initially applied for the patent in 2005, allowed that patent application to lapse, but then reapplied for patent protection in February 2008, after months of efforts to commercialize the subject matter. Khalid began a startup company to market the invention. In 2014, the USPTO issued patent no. 8,782,637 (the '637 Patent) for what Khalid calls a "mini-cloud" invention. The '637 Patent is based on ideas Khalid first developed while in graduate school in 1996 and 1997. The ideas evolved to form cloud computing for residential users using a mini-cloud host and "thin terminals." The invention comprises several components: (a) a thin terminal,

---

[3] Because the trial court dismissed this case on Microsoft's CR 12(b)(6) motion, we assume the truth of Khalid's factual allegations. See Lawson v. State, 107 Wn. 2d 444, 448, 730 P.2d 1308 (1986). The facts set out here are taken from allegations in Khalid's complaint, documents Microsoft submitted with its motion, and a declaration Khalid submitted in opposition to Microsoft's motion.

akin to a Roku stick, that can be inserted into any monitor and (b) connection with a subscription provider in the cloud and (c) connection to a mini-cloud host device to deliver computing resources using specific integration techniques outlined in the patent.

In December 2011, Microsoft offered Khalid a position as Senior Program Manager in their Bing division. As part of the hiring process, Microsoft recruiter Shannon Carlsen asked Khalid to sign a Microsoft Corporation Employee Agreement (the Employee Agreement or Agreement). This agreement contains two provisions concerned with employee inventions. Section 5, "Inventions," states:

> I will promptly and fully disclose to MICROSOFT any and all inventions, discoveries, designs, developments, improvements and trade secrets, whether or not patentable (collectively "Inventions") that I solely or jointly may conceive, develop, reduce to practice or otherwise produce during my employment with MICROSOFT, including those Inventions I contend that MICROSOFT does not own. **Subject to the NOTICE below, I agree to grant and I hereby grant, transfer and assign to MICROSOFT or its designee all my rights, title and interest in and to such Inventions.** I waive and quitclaim to MICROSOFT or its designee any and all claims of any nature whatsoever that I now or hereafter may have for infringement of any patent application, patent, or other intellectual property right relating to any Inventions so assigned to MICROSOFT or its designee.
>
> NOTICE**:** My obligation to assign shall not apply to any Invention that I can establish:
>
>> a) was developed entirely on my own time without using any equipment, supplies, facilities, or trade secret information owned or supplied to me by MICROSOFT;
>>
>> b) does not relate (i) directly to the business of MICROSOFT or (ii) to the actual or demonstrably anticipated research or development of MICROSOFT; and

> c) does not result, in whole or in part, from any work performed by me for MICROSOFT.
>
> I agree to grant and I hereby grant, transfer and assign to MICROSOFT or its designee all my rights, title and interest in and to any and all Inventions full title to which may be required to lie in the United States government by law or by any contract between MICROSOFT and the United States government or any of its agencies. In addition to the rights provided to MICROSOFT under paragraph 6 below, as to any Invention complying with 5(a)-(c) above that results in any product, service or development with potential commercial application, <u>MICROSOFT shall be given the right of first refusal to obtain exclusive rights to the Invention and such product, service or development</u>.[4]

(Emphasis added). Section 6, "Excluded and Licensed Inventions," states, in part:

"I have attached a list describing all Inventions belonging to me and made by me prior to my employment with MICROSOFT that I wish to have excluded from this Agreement. If no such list is attached, I represent that there are no such Inventions." The first page of the Employee Agreement contains a line that reads: "If you wish to attach a list of inventions, per paragraph 6 below, please contact your recruiter."

On December 19, 2011, Khalid signed the Employee Agreement and emailed it to Carlsen. In accordance with section 6, Khalid sent Carlsen an invention exclusion list. Carlsen acknowledged receipt of the attached list and copied her email to Microsoft recruitment coordinator Ricardo Bustamante. Khalid's attachment disclosed the following (among other inventions):

> Following list covers items that I would like [to] list under section 6 of employee agreement. I did those works with a team to participate in some start-up accelerator program. I've significant equity in those start-ups and would like to disclose here.

---

[4] Khalid contends this "right of first refusal" obligation violates RCW 49.44.140.

1.  THIN DEVICES TO DELIVER COMPUTING POWER (pending patent application)

. . . .

2.  HOME ACCESS GATEWAY TO DELIVER VIRTUAL DESKTOP TO HOME USER (pending patent application)

. . . .

3.  A system and method to support subscription based Infrastructure and software as a service (pending patent application)

. . . .

4.  A home cloud system with hybrid hypervisor to virtualize home digital equipment

. . . .

5.  SAFE AND SECURE PROGRAM EXECUTION FRAMEWORK (to be issued)

. . . .

6.  SAFE AND SECURE PROGRAM EXECUTION FRAMEWORK WITH GUEST APPLICATION SPACE (pending patent application)

On January 9, 2012, Khalid attended an employee orientation program at Microsoft where he was required to sign a hard copy of the Employee Agreement. During orientation, Khalid again submitted the invention exclusion list and made a hand-written note on the signed Employee Agreement indicating the attachment of the exclusion list. Khalid received no further instruction pertaining to his invention exclusion list and went on to work for Microsoft from January 2012 until February 2015.

After Microsoft terminated Khalid in February 2015, he sent an email to Microsoft officers, informing it of his patents and alleging that Microsoft was using his patented mini cloud technology. On February 19, 2015, Microsoft attorney Patrick Evans responded and informed Khalid that, since he did not disclose these inventions or provide an exclusion list of inventions to the company as permitted

by section 6 of the Employee Agreement, Khalid was obligated to assign his intellectual property to Microsoft under section 5 of the Agreement. Khalid objected to Microsoft's claimed assignment right to the '637 and '219 Patents and informed Evans that he had in fact submitted an invention exclusion list under section 6 of the Agreement. Two weeks later, Evans sent another email to Khalid, again asserting Microsoft held assignment rights to the '219 and '637 Patents and provided Khalid with a form to sign to effectuate the patent assignment process. In March 2015, Khalid provided Evans a copy of the invention disclosure list he had provided to Microsoft in 2011. In June 2015, Khalid notified Evans that he believed Microsoft's Xbox One was infringing Khalid's '637 Patent. Khalid and Evans had further email exchanges discussing possible resolutions of the disputes but reached no agreement.

In May 2016, Khalid received a letter from Microsoft's outside counsel at Merchant and Gould (M&G letter). In this letter, Microsoft's attorneys refuted Khalid's allegations that Microsoft was infringing the '637 Patent and again asserted that Microsoft had no evidence that Khalid had submitted an invention exclusion list, and that his "failure to exclude the inventions described in the '219 and '637 patents resulted in a grant of an exclusive, royalty-free, irrevocable, worldwide license to these inventions to Microsoft." The letter also contained Microsoft's terms of settlement: in return for a grant of a non-exclusive, royalty-free, perpetual, irrevocable, worldwide license to the disputed patents and a full release of all claims and liability, Microsoft would transfer all of its ownership interest in the '219 and '637 Patents to Khalid. Khalid declined this offer.

When Khalid received the M&G letter, he was in the middle of a lawsuit against Citrix Systems, Inc. (Citrix), a Microsoft vendor with whom Khalid had been previously employed. Like Microsoft, Citrix claimed title of the '219 and '637 Patents. Khalid had filed suit against Citrix in October 2015 in King County Superior Court in order to clear the cloud on the title to the patents. Khalid prevailed on his claims and a $5.8 million judgment was entered against Citrix.

Khalid brought a lawsuit against Microsoft on January 28, 2019, alleging fourteen causes of action.[5] Microsoft filed a CR 12(b)(6) motion to dismiss, arguing that the claims of fraud, tort, wage statute, and breach of the duty of good faith were time-barred. Microsoft argued that the remainder of the claims did not satisfy pleading requirements and that a pro se litigant may not represent a class in a class action. The trial court agreed and dismissed all claims, finding each to be either time-barred, unsupported by the Employee Agreement, or inadequately pled. Khalid appeals the dismissal of each claim.

## DISCUSSION

We review a CR 12(b)(6) dismissal de novo. Trujillo v. Nw Tr. Servs., Inc., 183 Wn.2d 820, 830, 355 P.3d 1100 (2015). Dismissal is appropriate if the trial

---

[5] Counts 1 and 2 allege violations of the Washington Consumer Protection Act (CPA). Count 3 alleges breach of contract. Count 4 alleges breach of the covenant of good faith and fair dealing. Count 5 alleges tortious interference with business. Count 6 alleges a tort "impacting full damage recovery." Count 7 alleges violations of Washington wage statutes. Count 8 alleges fraudulent inducement to contract. Count 9 alleges the infliction of "discomfort and inconvenience by interfering with plaintiff's business property right." Count 10 alleges a violation of the Washington Racketeering Act. Count 11 seeks declaratory relief on the ownership of the '219 and '637 Patents. Count 12 seeks declaratory and injunctive relief on the unenforceability of a provision of Section 5 of the Agreement. Count 13 seeks class action certification for the above violations, and count 14 alleges fraud.

court concludes that the plaintiff can prove no set of facts consistent with the complaint to justify recovery. A plaintiff's factual allegations are presumed true for purposes of a CR 12(b)(6) motion. Lawson v. State, 107 Wn. 2d 444, 448, 730 P.2d 1308 (1986). "A complaint survives a CR 12(b)(6) motion if any state of facts could exist under which the court could sustain the claim for relief. Thus, a court may consider hypothetical facts not part of the formal record in deciding whether to dismiss a complaint pursuant to CR 12(b)(6)." Haberman v. Washington Pub. Power Supply Sys., 109 Wn.2d 107, 120, 744 P.2d 1032 (1987) (citations omitted).

### CPA Claims under RCW 19.86.020 (Count 1)

Khalid contends the trial court erred in dismissing his CPA claims under RCW 19.86.020. To establish a CPA claim, a plaintiff must prove: (1) an unfair or deceptive act or practice that (2) affects trade or commerce and (3) impacts the public interest, and (4) the plaintiff sustained damage to business or property that was (5) caused by the unfair or deceptive act or practice. Keodalah v. Allstate Ins. Co., 194 Wn.2d 339, 349-50, 449 P.3d 1040 (2019).

Khalid's CPA claim under RCW 19.86.020 can be separated into three distinct alleged "unfair acts:" (1) Sections 5 and 6 of the Employee Agreement, requiring Khalid to assign his personal inventions to Microsoft and granting the company the right of first refusal to personal inventions, are inherently unfair and violate RCW 49.44.140;[6] (2) Microsoft concealed Khalid's invention exclusion list

---

[6] RCW 49.44.140 provides in part:

> [a] provision in an employment agreement which provides that an employee shall assign or offer to assign any of the employee's rights in an

- 8 -

in order to "intimidate or extort" Khalid to gain access to his patents; and (3) Microsoft claimed it had rights to inventive services from Khalid starting December 19, 2011, but did not start paying him for that service until January 9, 2012.

Khalid's CPA claims are governed by the four-year statute of limitations under RCW 19.86.120. Generally, a cause of action accrues and a statute of limitations is triggered when the plaintiff has the right to seek relief from the courts. Gazija v. Nicholas Jerns Co., 86 Wn.2d 215, 219, 543 P.2d 338 (1975). A party has the right to apply to a court for relief when it "can establish each element of the action." Shepard v. Holmes, 185 Wn. App. 730, 739, 345 P.3d 786 (2014). Accrual is not delayed, however, because more extensive harm flows from the wrongful conduct. Green v. Am. Pharm. Co., 136 Wn.2d 87, 96, 960 P.2d 912 (1998).

Microsoft argues Khalid's RCW 19.86.020 claims accrued in either December 2011, when Khalid executed the Employee Agreement, or January 2012, when he began working for Microsoft, and were therefore time-barred under the four-year statute of limitations. We agree in part and disagree in part.

With regard to Khalid's claim that provisions of the Employee Agreement are unfair under RCW 19.86.020 because they violate RCW 49.44.140, this claim accrued when Khalid signed the agreement. At that point, Khalid had the right to

---

invention to the employer does not apply to an invention for which no equipment, supplies, facilities, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) directly to the business of the employer, or (ii) to the employer's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for the employer. Any provision which purports to apply to such an invention is to that extent against the public policy of this state and is to that extent void and unenforceable.

seek judicial relief from any provisions he contends violate the CPA or RCW 49.44.140. This CPA claim is time-barred and the trial court did not err in dismissing it.

The CPA claim based on the alleged concealment of Khalid's exclusion list, however, did not accrue when Khalid began working for Microsoft because he had no reason to know Microsoft would deny the list's existence until February 2015, when Khalid received Evans' email informing him that Khalid had not excluded any inventions pursuant to section 6 of the Employee Agreement. The alleged unfair act was Microsoft's assertion that Khalid's invention exclusion list did not exist. This particular cause of action accrued in February 2015 and Khalid's CPA claim, filed in January 2019, was timely.

The trial court alternatively concluded that this claim was inadequately pleaded because Khalid failed to allege damage. We disagree with this conclusion as well. Khalid clearly alleged "[t]he plaintiff[] suffered damages caused and proximately caused by the actions of the Defendant as set forth below." The trial court erred in dismissing this CPA claim at the CR 12(b)(6) stage.

With regard to the claim that Microsoft did not pay Khalid for inventive services between December 2011 and January 2012, Khalid alleged he signed the Employee Agreement, assuming it became effective on the first day of this employment with Microsoft, on January 9, 2012. Khalid further contends he filed three patent applications on January 8, 2012, after signing the Employee Agreement and before he began working for Microsoft. Khalid appears to believe that Microsoft's assertion of rights, in February 2015, to inventions is an unfair and

deceptive practice under RCW 19.86.020 because Microsoft claimed a right of first refusal to inventions he developed and for which he sought patent protection before he actually started working for the company.

The trial court did not dismiss this claim on statute of limitations grounds. The court instead dismissed it because "[t]he contract says the inventive service runs from the employee's start date" and "[t]he right of first refusal does not apply." Indeed, section 5 of the Employee Agreement provides for the assignment of inventions and the right of first refusal only on inventions developed "during my employment with MICROSOFT." The trial court concluded that the Employee Agreement's effective date is not the date he initially signed that document, but was his first day of employment with Microsoft. Under this reading of the agreement, Microsoft gained no rights to inventions developed prior to the date he started working unless Khalid subsequently incorporated them into a Microsoft product or assented to Microsoft doing so. We agree with this reading of the Employee Agreement. Because he cannot establish that Microsoft automatically gained rights to his inventions pre-dating his employment with the company, the trial court did not err in dismissing this CPA claim.

We affirm the dismissal of Khalid's CPA claim that sections 5 and 6 of the Employee Agreement are per se unfair under RCW 19.86.020 because they violates RCW 49.44.140. We also affirm the dismissal of the CPA claim that Microsoft claimed rights to inventive services between December 19, 2011 and January 9, 2012. But we reverse the dismissal of Khalid's CPA claim that Microsoft

concealed Khalid's invention exclusion list in order to gain access to his patents, conduct he claims is allegedly unfair and deceptive under RCW 19.86.020.[7]

Restraint of Trade Claim under RCW 19.86.030 (Count 2)

In count 2, Khalid alleges that the Employee Agreement is an unlawful restraint of trade under RCW 19.86.030 because sections 5 and 6 contain overbroad invention assignment provisions. Microsoft argues this claim was correctly dismissed because it is time-barred. We agree.

RCW 19.86.030 provides that "[e]very contract, combination, in the form of trust or otherwise, or conspiracy in restraint of trade or commerce is hereby declared unlawful." The Washington Supreme Court has interpreted RCW 19.86.030 as Washington's equivalent of section 1 of the Sherman Antitrust Act, 15 U.S.C. section 1. State v. Black, 100 Wn.2d 793, 799, 676 P.2d 963 (1984). Claims under RCW 19.86.030 are also governed by a four-year statute of limitations. RCW 19.86.120.

Khalid argues this claim accrued in May 2016, when he received the M&G letter. We disagree. Khalid's claim under RCW 19.86.030 accrued on December 19, 2011, when Khalid signed the contract he contends is unlawful. At that point, Khalid had knowledge of all elements of this cause of action. The trial court did not err in dismissing this claim under RCW 19.86.120.

---

[7] Microsoft did not seek dismissal of the CPA claim based on a failure to plead or inability to prove a public interest impact. We therefore do not address that issue here.

Breach of Contract (Count 3)

Khalid argues that the trial court erred in dismissing his breach of contract claim when it concluded that he had not properly alleged breach. We agree.

To prevail on a breach of contract action, a plaintiff must allege and prove a valid contract existed between the parties, this contract was breached, and the plaintiff was damaged by that breach. Univ. of Washington v. Gov't Emps Ins. Co., 200 Wn. App. 455, 467, 404 P.3d 559 (2017). Khalid has properly alleged each of these elements here.

The trial court dismissed Khalid's breach of contract claim because "the employment contract says he assigned all inventions unless they did not relate to Microsoft" and "there's been no allegation that Microsoft has no right to the patents on that or that Microsoft breached the employment agreement." But in his amended complaint, Khalid alleged that he developed the inventions in the '219 and '637 Patents before his employment with Microsoft, that he explicitly excluded these inventions from the assignment provision of the Employee Agreement, and that Microsoft breached the Employee Agreement by claiming he had failed to submit an invention exclusion list and by subsequently claiming rights to Khalid's '219 and '637 Patents. Khalid also pleaded that he "suffered damages caused and proximately caused by the actions of the Defendant." The trial court erred in concluding that Khalid failed to adequately plead facts to establish the existence of an agreement, its breach, and his damage.

Microsoft argues that the act of claiming that Khalid failed to submit an invention exclusion list cannot constitute a breach of the Employee Agreement

because it was merely an assertion of fact. This argument mischaracterizes Khalid's allegations. Section 5 provides that, subject to some exceptions, Microsoft would have no ownership of, or assignment rights to, any independently developed inventions. Khalid clearly alleges he excluded the '219 and '637 Patents from the scope of section 5 by submitting an invention exclusion list to both the Microsoft recruiter and subsequently directly to Microsoft.

Microsoft's breach, as alleged by Khalid, occurred when Microsoft refused to honor Khalid's invention exclusion list and subsequently claimed rights in the very patents he had disclosed in that list. Assuming these alleged facts to be true, Khalid alleged Microsoft breached sections 5 and 6 of the Employee Agreement sufficient to survive a CR 12(b)(6) motion.

Microsoft next argues that its insistence on a royalty-free license to these patents cannot be a breach of the Employee Agreement because section 6 granted this license for any independently developed invention that was incorporated into a Microsoft product. Microsoft maintains that, if as Khalid alleges, Microsoft incorporated components of the '637 patent into Xbox One, it could not have breached section 6. This argument lacks merit. Section 6 explicitly provides Microsoft with a license to use an employee's independent inventions only if the employee used them in a Microsoft product or permitted Microsoft to use them.

Khalid alleged in his complaint that Microsoft neither owned nor had any right to the '219 and '637 Patents. This contention obviously conflicts with any assertion that Khalid voluntarily authorized Microsoft to incorporate his technology into one of its products. And while the M&G letter asserts numerous other

defenses in relation to this claim of patent infringement, it never asserted that he had granted Microsoft permission to use the technology under section 6. These allegations support the proposition that Khalid neither incorporated the inventions into a Microsoft project nor permitted Microsoft to do so.

The trial court erred in dismissing Khalid's breach of contract claim.

Breach of Covenant of Good Faith and Fair Dealing (Count 4).

Khalid argues the trial court also erred in concluding that his claim for breach of the duty of good faith and fair dealing is time-barred under a three-year statute of limitations. Khalid contends the six-year statute of limitations applicable to written contracts under RCW 4.16.040(1) applies to this claim. We agree.

RCW 4.16.040(1) applies a six-year statute of limitations to "action[s] upon a contract in writing, or liability express or implied arising out of a written agreement." Under RCW 4.16.080(3), a three-year statute of limitations applies to any "action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument."

Every Washington contract includes an implied duty of good faith and fair dealing that obligates the parties to cooperate with each other so that each may obtain the full benefit of performance. Badgett v. Security State Bank, 116 Wn.2d 563, 569, 807 P.2d 356 (1991). Khalid alleges Microsoft breached the implied covenant of good faith and fair dealing arising out of his written Employee Agreement by claiming the invention exclusion list he submitted did not exist. He does not contend there was an oral agreement between the parties and the implied

covenant springs from this oral agreement. Thus, by its clear terms, RCW 4.16.040(1) applies to this claim.

Microsoft argues that under Rekhter v. State Dep't of Social and Health Services, 180 Wn.2d 102, 112, 323 P.3d 1036 (2014), a claim for breach of the implied duty of good faith is distinct from a claim for breach of contract and that a breach of an express contract term is not a prerequisite to a claim for breach of the duty of good faith. We do not disagree with Microsoft's reading of Rekhter. That case, however, does not apply here.

In Rekhter, a class of in-home healthcare providers, who had contracted with Department of Social and Health Services (DSHS) to provide services to DSHS clients, sued the DSHS for breach of the duty of good faith after the agency passed a rule which resulted in DSHS paying live-in healthcare providers at a lower rate than providers who did not live with their clients, while requiring live-in providers to render the same services. Id. at 108-09. The jury found for the healthcare providers and, on appeal, DSHS argued that the jury could not have found a breach of the duty of good faith where it also found that DSHS did not breach a contract term. Id. at 111. The Supreme Court disagreed, concluding that DSHS's argument would render the good faith and fair dealing doctrine superfluous and that the duty can arise when there is no breach of an express term of the contract. Id. at 111-12.

But Rekhter does not stand for the proposition that an action for breach of the duty of good faith and fair dealing cannot be, in certain cases, an action "arising out of a written agreement" as required by RCW 4.16.040(1). To the contrary,

Rekhter held that "[t]he implied duty of good faith is derivative, in that it applies to the performance of specific contract obligations.  If there is no contractual duty, there is nothing that must be performed in good faith."  Id. at 113.  Contrary to Microsoft's argument, if it had an implied duty not to cloud Khalid's title to his independent inventions under section 5, and it breached that duty of good faith and fair dealing by concealing or denying the existence of Khalid's invention exclusion list, a jury could conclude this act interfered with Khalid's rights to the full benefit of performance under the Employee Agreement.

Microsoft correctly notes that in a footnote in Steinberg v. Seattle-First National Bank, 66 Wn. App. 402, n. 4, 832 P.2d 124 (1992), the court of appeals applied a three-year statute of limitations to a claim of breach of the covenant of good faith and fair dealing.  But Steinberg contained no analysis on the issue and it appears not to have been challenged.  In cases where a legal theory is not discussed in the opinion, that case is not controlling on a future case where the legal theory is properly raised. Berschauer/Phillips Const. Co. v. Seattle Sch. Dist. No. 1, 124 Wn. 2d 816, 824, 881 P.2d 986 (1994).  The issue is squarely presented to this court and, under the facts as Khalid alleges here, the implied duty arises out of a written agreement, not an oral one, and, as a result, RCW 4.16.040(1) applies.

Finally, Khalid adequately alleges a breach of the duty of good faith and fair dealing to survive a CR 12(b)(6) motion.  He alleges Microsoft had a duty not to assert ownership rights to Khalid's personal inventions under sections 5 and 6 of the Employment Agreement and it breached the implied covenant of good faith and fair dealing by continuing to claim rights to the '219 and '637 Patents even

after Khalid produced evidence that he had properly excluded these inventions from the scope of that agreement. The trial court erred in dismissing this claim.

### Tortious Interference with Business Expectancy (Count 5) and Tort "Impacting Full Damage Recovery" (Count 6)

In count five, Khalid alleged that Microsoft tortiously interfered with a business expectancy "by clouding the title of patents 219 and 637 in 2015." Tortious interference with a business expectancy is a common law tort, subject to the three-year statute of limitations in RCW 4.16.080(3). City of Seattle v. Blume, 134 Wn. 2d 243, 251, 947 P.2d 223 (1997); Westmark Dev. Corp. v. City of Burien, 140 Wn. App. 540, 549, 166 P.3d 813 (2007). Khalid alleges he became aware of the cloud on the title of his patents in February 2015. Because Khalid did not bring this claim until January 2019, the trial court correctly concluded this claim is time-barred.

In count six, Khalid alleged that Microsoft's actions in sending the M&G letter in 2016 impacted his ability to fully recover in his suit against Citrix. Khalid suggests Microsoft timed the issuance of the M&G letter for the purpose of undermining his recovery against one of its business partners, Citrix. But if Microsoft's assertion of rights to Khalid's '219 and '637 Patents was tortious, that act occurred in February 2015, and not in 2016. The fact that Microsoft asserted a legal right to Khalid's inventions on two separate occasions does not delay the accrual of the cause of action even if he sustained emotional distress damages with the second act that he did not sustain with the first. Because Khalid admittedly

knew of Microsoft's claim to ownership of the patents no later than February 2015, this tort claim is also time-barred.

<u>Wrongful Withholding of Wages (Count 7)</u>

Khalid alleges two separate wage statute violations. First, Khalid claims Microsoft wrongfully withheld wages when it did not pay him wages or benefits for inventive services between December 19, 2011, when he signed the Employee Agreement, and January 9, 2012, when he began working for Microsoft, in violation of chs. 49.52 and 49.48 RCW. Second, Khalid claims that after his termination, Microsoft delayed paying two weeks of accrued vacation pay for six months in violation of ch. 49.52 RCW. The trial court applied a three-year statute of limitations and dismissed both claims as untimely. We conclude the trial court did not err in doing so.

RCW 49.52.050(2) makes it a misdemeanor for any employer to "[w]illfully and with intent to deprive the employee of any part of his or her wages" or pay that employee "a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract." RCW 49.52.070 states that "[a]ny employer . . . who shall violate any of the provisions of RCW 49.52.050 (1) and (2) shall be liable in a civil action by the aggrieved employee . . . to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees."

RCW 49.48.010 provides:

> When any employee shall cease to work for an employer, whether by discharge or by voluntary withdrawal, the wages due him or her on account of his or her employment shall be paid to him or her at the end of the established pay period ….
>
> It shall be unlawful for any employer to withhold or divert any portion of an employee's wages unless the deduction is:
>
> (1) Required by state or federal law; or
> (2) Except as prohibited under RCW 49.48.160, specifically agreed upon orally or in writing by the employee and employer; or
> (3) For medical, surgical, or hospital care or service . . . .

RCW 49.48.030 further provides "In any action in which any person is successful in recovering judgment for wages or salary owed to him or her, reasonable attorney's fees . . . shall be assessed against said employer or former employer."

As to Khalid's first statutory wage claim, because the Employee Agreement did not confer any rights to Khalid's "inventive services," before January 9, 2012, he fails to state a claim for wrongful withholding of wages for the December 19, 2011 to January 9, 2012 time period. The trial court did not err in dismissing this claim, even though we do so on alternative grounds.

As to Khalid's second statutory wage claim, he argues his salary was set by written agreement and the six-year statute of limitations for contract claims under RCW 4.16.040(1) should apply. Khalid relies on Kloss v. Honeywell, Inc., 77 Wn. App. 294, 890 P.2d 480 (1995) for this argument. Although the plaintiff in Kloss recovered lost wages, and received an award of attorney fees under RCW 49.48.030, id. at 304, his sole cause of action was breach of contract. Id. at 297-98. Kloss did not allege separate statutory violations under ch. 49.52 RCW or ch.

49.48 RCW. <u>Kloss</u> is not clear precedent for the application of a six-year statute of limitations to the wrongful withholding of wages claim.

The more analogous case is <u>Seattle Professional Engineering Employees Ass'n v. Boeing Co.</u>, 139 Wn.2d 824, 991 P.2d 1126 (2000), in which the Supreme Court held the three-year statute of limitation under RCW 4.16.080(3) applied to claims under the Washington Minimum Wage Act ("WMWA"), ch. 49.46 RCW. In that case, Boeing employees challenged the company's requirement that they attend a "pre-employment" orientation session without pay. <u>Id.</u> at 827. The Supreme Court held that despite having no agreement to be paid for this time, the employees were entitled to minimum wages for the time spent in the orientation session. <u>Id.</u> at 835. Because Boeing's legal obligation arose out of a statutory duty under the WMWA, and not out of a contractual one, the court held the three-year statute of limitations under RCW 4.16.080(3) applied. <u>Id.</u> at 837.

Although Khalid received a written employment offer from Microsoft, and he executed an Employee Agreement, neither sets out Khalid's entitlement to vacation pay. We cannot conclude his statutory wage claim is an "action upon a contract in writing." For this reason, the most appropriate statute of limitations is RCW 4.16.080(3) and Khalid's wage statute claims were appropriately dismissed as time-barred.

<u>Fraudulent Inducement to Contract (Count 8) and Fraud (Count 14)</u>

In count eight, Khalid alleges Microsoft fraudulently induced him into signing the Employee Agreement by representing that Microsoft would have no interest in any inventions he disclosed and excluded pursuant to section 6 of the Employee

Agreement.  In count fourteen, Khalid makes almost identical allegations.  The trial court dismissed these two claims as time-barred.  We conclude it did err in doing so.

Microsoft and Khalid agree the three-year statute of limitation for torts in RCW 4.16.080(4) applies to his fraud claims.  Under this statute, any action for relief based on fraud must be commenced within three years, but the cause of action is not "deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."  The discovery rule therefore applies to claims of fraud.  Shepard v. Holmes, 185 Wn. App. 730, 739, 345 P.3d 786 (2014).

Khalid argues his fraud claims accrued in 2016 when he received the M&G letter because he discovered on that date that he had been damaged by Microsoft's fraud.  The allegations in Khalid's complaint do not support this argument.  Khalid contended that by August 29, 2015, he notified Microsoft's counsel that the company's claim to his inventions was "causing problems for Khalid" because he could not refile patent applications for inventions listed in the invention exclusion list without Microsoft relinquishing its claim to those inventions. his allegation discloses damage or injury before Khalid received the M&G letter.

Where the discovery rule applies, "[t]he general rule in Washington is that when a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the actual harm."  Green v. A.P.C., 136 Wn. 2d 87, 96, 960 P.2d 912 (1998).  Khalid was on notice of appreciable harm, based on his own

allegations, no later than August 2015.  Under the three-year statute of limitations, Khalid's fraud claims are time-barred.

<u>Infliction of Discomfort and Inconvenience by Interfering with Business Property Rights (Count 9)</u>

In count nine, Khalid alleges Microsoft inflicted discomfort and inconvenience by interfering with his right to the '219 and '637 Patents.  The trial court held that the claim accrued in 2015 and was untimely under a three-year statute of limitations.  Khalid contends that the M&G letter "started the inconvenience of proper use of patent by creating a fresh continuing injury."  Once again, however, Khalid was aware of the cloud on his title, and therefore the limitations on the marketability of his patents, by February 2015.  The trial court properly dismissed this tort-based claim under the statute of limitations.

<u>Racketeering through Extortion (Count 10)</u>

Khalid next contends that the trial court erred in dismissing his criminal profiteering claims.  Khalid alleges that Microsoft's use of the overbroad employee agreement equates to "extortion" and "leading organized crime" in violation of the Criminal Profiteering Act.[8]

Khalid seeks relief under RCW 9A.82.100.  This statute provides a cause of action for any person who has been injured "by an act of criminal profiteering that is part of a pattern of criminal profiteering activity," or by "leading organized

---

[8] On appeal, Khalid raises a number of new arguments relating to the criminal profiteering claim, including that Microsoft violated RCW 9A.82.080 (use of proceeds of criminal profiteering) and committed forgery in violation of RCW 9A.60.020 as a predicate act for a pattern of criminal profiteering.  Because Khalid did not raise these arguments below, we refuse to evaluate them for the first time on appeal.  RAP 2.5(a).

crime" under RCW 9A.82.060. Any such claim must be initiated "within three years after discovery of the pattern of criminal profiteering activity or after the pattern should reasonably have been discovered." RCW 9A.82.100(7).

Khalid's criminal profiteering claims are predicated on Microsoft's use of the "overbroad Agreement" to "extort[]" its employees' intellectual property that it is not legally entitled to under RCW 49.44.140. But, by his own allegations, Khalid knew of the threats underlying this "extortion" by March 2015, when Microsoft contended it owned his intellectual property and demanded that he execute a patent assignment document. Khalid's racketeering claims are thus time-barred.

Declaratory Relief as to Ownership of the Patents (Count 11) and Enforceability of Microsoft's Right of First Refusal (Count 12)

Khalid seeks declaratory relief on (1) the ownership of the '219 and '637 Patents, and (2) the enforceability of Microsoft's right of first refusal in section 5 of the Employee Agreement.[9] The trial court dismissed both claims on the grounds that the requested relief was too vague. We disagree.

Khalid's complaint seeks declaratory relief. RCW 7.24.020, a provision within the Uniform Declaratory Judgments Act (UDJA), provides:

> A person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

---

[9] Khalid's complaint seeks declaratory relief associated with several other claims we have determined to be time-barred, such as alleged violations of RCW 19.86.020 and RCW 49.48.050. Because the claims are barred by the applicable statutes of limitations, the request for declaratory relief under those statutes is similarly time-barred.

The UDJA requires (1) an actual, present and existing dispute, or the mature seeds of one, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive. Diversified Indus. Dev. Corp. v. Ripley, 82 Wn.2d 811, 815, 514 P.2d 137 (1973).

Khalid alleged sufficient facts to meet all four justiciability factors under Diversified. He alleges an actual, present dispute exists with Microsoft over the company's ownership interest in or license rights to Khalid's patents. The M&G letter demonstrates the parties have genuine and opposing interests. These interests, as alleged by Khalid, are direct and substantial because Microsoft's cloud on Khalid's title to the patents has interfered with his ability to file additional patents, and has led to lost profits. And a judicial determination of the parties' contractual rights to this intellectual property would be both final and conclusive. The trial court thus erred in dismissing Khalid's UDJA claim in count eleven.

In count twelve, Khalid seeks a declaratory judgment that Microsoft's right of first refusal, contained in section 5 of the Employee Agreement, violates RCW 19.86.020 and RCW 49.44.140. Khalid's claim under RCW 19.86.020 is time-barred and this portion of count twelve was properly dismissed on that basis. But no such barrier exists as to Khalid's claim that section 5 violates RCW 49.44.140. Microsoft correctly points out that nothing in the record indicates Microsoft seeks to enforce a right of first refusal against the '219 and '637 Patents. But Microsoft has not disclaimed the right to do so in the future and Khalid alleges that this right

of first refusal is preventing him from freely marketing his patents. Khalid alleged sufficient facts to survive a CR 12(b)(6) motion to dismiss on this claim. The trial court erred in dismissing this UDJA claim.

Class Action Claims (Count 13)

Finally, Khalid argues the trial court erred in dismissing his class action allegations. In his complaint, Khalid sought class certification for the declaratory relief he requested under count twelve. He contends that this action was not properly before the court until he filed an actual motion for class certification.

But Microsoft moved to dismiss the class claims on the basis that a pro se plaintiff may not bring claims on behalf of a class. The trial court dismissed the claim because "[Khalid] agrees that this is not a class action and that he cannot lead a class action and has no intention of doing so."

We see no error in dismissing Khalid's class claims. In Washington State Bar Ass'n v. Great Western Union Federal Savings & Loan Ass'n, 91 Wn.2d 48, 57, 586 P.2d 870 (1978), the Supreme Court held that a layperson may bring a lawsuit on his own behalf but may not do so as a self-represented litigant. Generally, pro se plaintiffs may not pursue claims on behalf of others in a representative capacity. Simon v. Hartford Life, Inc., 546 F.3d 661, 664 (9th Cir. 2008).

Although the trial court could have dismissed the class claims without prejudice to allow Khalid to obtain counsel and to seek leave to add such claims to the case, the trial court confirmed that Khalid "just wanted to make sure that other people could be included if they wanted to" and he was not seeking to pursue

a class action. Dismissing the class claims with prejudice was not an abuse of discretion under these circumstances.

We affirm the dismissal of Khalid's claims, with the exception of one claim arising under the CPA, his claims for breach of contract and breach of implied covenant of good faith and fair dealing, and his UDJA requests for declaratory relief as it relates to the ownership of his patents and the contractual right of first refusal. We reverse the dismissal of these claims and remand for further proceedings consistent with this opinion.[10]

_Andrus, A.C.J._

WE CONCUR:

_Mann, C.J._

---

[10] We grant Khalid's motion to strike the April 14, 2020 Statement of Supplemental Authority filed by Microsoft. RAP 10.8 clearly provides that such statements should contain no argument. Microsoft's pleading violates this rule by arguing this court should affirm the trial court based on the preclusive effect of a federal court order dismissing claims Khalid filed against Microsoft on April 6, 2020. See Khalid v. Microsoft Corp., No. C19-130-RSA. And we will not consider on appeal legal arguments not presented to the trial court. Moreover, RAP 2.5(a) provides that a party "may present a ground for affirming a trial court decision which was not presented to the trial court if the record has been sufficiently developed to fairly consider the ground." The record here is insufficient for this court to evaluate Microsoft's res judicata argument.